## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NANCY GIMENA HUISHA-HUISHA, and her minor child I.M.C.H.*; VALERIA MACANCELA BERMEJO, and her minor daughter, B.A.M.M.*; and JOSAINE PEREIRA-DE SOUZA, and her minor children H.N.D.S.*; E.R.P.D.S.*; M.E.S.D.S.*; H.T.D.S.D.S.*, on behalf of themselves and others similarly situated, <br>c/o American Civil Liberties Union <br>125 Broad Street, 18th Floor <br>New York, NY 10004; <br><br>*Plaintiffs*, <br><br>v. <br><br>PETER T. GAYNOR, ACTING SECRETARY OF HOMELAND SECURITY, in his official capacity, <br>Department of Homeland Security <br>245 Murray Lane SW <br>Washington, DC 20528; <br><br>MARK A. MORGAN, SENIOR OFFICIAL PERFORMING THE DUTIES OF THE COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION ("CBP"), in his official capacity, <br>U.S. Customs and Border Protection <br>1300 Pennsylvania Ave. NW <br>Washington, DC 20229; <br><br>WILLIAM A. FERRARA, EXECUTIVE ASSISTANT COMMISSIONER, CBP OFFICE OF FIELD OPERATIONS, in his official capacity, <br>CBP Office of Field Operations <br>1300 Pennsylvania Ave. NW <br>Washington, DC 20229; <br><br>RODNEY S. SCOTT, CHIEF OF U.S. BORDER PATROL, in his official capacity, <br>U.S. Border Patrol <br>1300 Pennsylvania Ave. NW <br>Washington, DC 20229; <br><br>JONATHAN FAHEY, SENIOR OFFICIAL PERFORMING THE DUTIES OF THE DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, in his official capacity, <br>U.S. Immigration and Customs Enforcement, <br>500 12th Street SW | ) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) | No. 21-cv-_____ |

| | |
|---|---|
| Washington, DC 20536; | ) |
| | ) |
| ALEX M. AZAR II, SECRETARY OF HEALTH | ) |
| AND HUMAN SERVICES, in his official capacity, | ) |
| U.S. Department of Health and Human Services | ) |
| Hubert H. Humphrey Building | ) |
| 200 Independence Ave. SW | ) |
| Washington, DC 20201; | ) |
| | ) |
| DR. ROBERT R. REDFIELD, DIRECTOR OF THE | ) |
| CENTERS FOR DISEASE CONTROL | ) |
| AND PREVENTION, in his official capacity, | ) |
| Centers for Disease Control and Prevention | ) |
| 1600 Clifton Road | ) |
| Atlanta, GA 30329; | ) |
| | ) |
| *Defendants*. | ) |

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(Violations of Public Health Service Act, Refugee Act, Foreign Affairs Reform and Restructuring Act of 1998, Immigration and Nationality Act, and Administrative Procedure Act)

*Proceeding under pseudonym pursuant to Federal Rule of Civil Procedure 5.2(a).

## INTRODUCTION

1.      In 2020, the federal government established an unlawful system for restricting immigration along the Canadian and Mexican borders under the purported authority of 42 U.S.C. § 265, a public health provision.  This system is established in a set of agency documents—a new regulation, several orders, and an implementation memo—which Plaintiffs collectively refer to as the "Title 42 Process" or "Title 42 Policy."  The stated purpose of the Policy is to protect against COVID-19.

*2.*      A certified class of unaccompanied children previously challenged this Title 42 Process, as unauthorized by any law and contrary to the statutes Congress has enacted.  The Process has been enjoined as to unaccompanied children, with all three Judges to have examined the issue agreeing that its likely unlawful.  *See P.J.E.S. by & through Escobar Francisco v. Wolf*, __ F. 3d. ___, No. CV 20-2245 (EGS), 2020 WL 6770508 (D.D.C. Nov. 18, 2020) (Sullivan, J., adopting report and recommendation of Harvey, J.); *J.B.B.C. v. Wolf*, No. 1:20-CV-01509-CJN, 2020 WL 6041870 (D.D.C. June 26, 2020) (Nichols, J.).

3.       Among other things, the Title 42 Process authorizes the summary expulsion of noncitizens, including vulnerable families seeking asylum in this country, without any of the procedural protections guaranteed by Congress—even if the families show no signs of having COVID-19.

4.      Plaintiffs are three families that fled their countries and are seeking safety in the United States.  Prior to the Title 42 Process, and pursuant to longstanding immigration statutes protecting asylum seekers, Plaintiffs were entitled to assert claims for asylum and related forms of humanitarian protection, and to procedures Congress established to ensure the fair determination of their right to remain in the United States.

5.      Through the Title 42 Process, the Administration has sought to usurp Congress's role and

bypass the entire immigration statutory scheme.  Specifically, the Administration contends that public health provisions in Title 42 of the U.S. Code—provisions that have rarely been used and never in this way—allow it to set aside the immigration laws.

6.     Title 42 authorizes various powers, such as testing and quarantines, but has never been interpreted to authorize the broad powers the government is claiming here.

7.     Not only does the Title 42 Process violate the immigration statutes, it is also patently arbitrary and capricious from a public health standpoint.

8.     The principal stated justifications for the Title 42 Process are that it is necessary to protect border officers and that the introduction of persons into congregate settings poses a danger to public health.  Specifically, the government asserts that when a person arrives at the border seeking protection and lacks a visa, border agents from the Department of Homeland Security ("DHS") will be forced to spend additional time screening the individual under the immigration laws, thereby exposing the officers to great danger.  But as public health experts have uniformly explained, numerous safety measures are available, including social distancing, face masks, and gloves.

9.     Indeed, the entire Title 42 Process was established as a pretext.  Numerous press reports show that expert scientists at the Centers for Disease Control and Prevention rejected the use of public health powers to expel noncitizens as unnecessary, but the Process was nevertheless imposed on the CDC by White House officials seeking to limit immigration, and not as a bona fide measure to protect public health.  *See*, *e.g.*, *Pence Ordered Borders Closed After CDC Experts Refused*, AP News (Oct. 3, 2020), https://apnews.com/article/virus-outbreak-pandemics-public-health-new-york-health-4ef0c6c5263815a26f8aa17f6ea490ae; *CDC Officials Objected to Order Turning Away Migrants at Border*, The Wall Street Journal (Oct. 3, 2020),

https://www.wsj.com/articles/cdc-officials-objected-to-order-turning-away-migrants-at-border-11601733601.

10.     Whatever the Administration's motivation for establishing the Title 42 Process and applying it to vulnerable families, the Process is unlawful.  Plaintiffs would face grave danger in their home countries and must be given the opportunity to remain in the United States to pursue the statutory humanitarian protections Congress has provided.

## JURISDICTION AND VENUE

11.     This case arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.* and its implementing regulations; the Convention Against Torture ("CAT"), *see* Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified as Note to 8 U.S.C. § 1231); and the Public Health Service Act of 1944, 42 U.S.C § 201, *et seq.*

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  *See also* 5 U.S.C. § 702 (waiver of sovereign immunity).

13.     Venue is proper under 28 U.S.C. § 1391(e)(1) because Defendants are agencies of the United States and officers of the United States acting in their official capacity, Defendants reside in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

### Plaintiffs

14.     Nancy Gimena Huisha-Huisha and her one-year-old child I.M.C.H. are detained in DHS

custody and subject to expulsion under the Title 42 Process.

15.      Josiane Pereira-De Souza and her children H.N.D.S., E.R.P.D.S., M.E.S.D., and H.T.D.S.D.S. are detained in DHS custody and subject to expulsion under the Title 42 Process. Ms. Pereira-De Souza's children are respectively sixteen, fourteen eleven, and seven years old.

16.      Valeria Macancela Bermejo and her four-year-old child B.A.M.M. are detained in DHS custody and subject to expulsion under the Title 42 Process.

**Defendants**

17.      Defendant Peter T. Gaynor is the Acting Secretary of Homeland Security, which is a cabinet-level department of the U.S. government. He is sued in his official capacity. In that capacity, Defendant Gaynor is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103. DHS's components include U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE").[1]

18.      Defendant Mark A. Morgan is the Senior Official Performing the Duties of the Commissioner of CBP. He is sued in his official capacity. In that capacity, he directed the issuance of the CBP's memorandum implementing expulsions under the Title 42 Process, and is a supervisory official responsible for implementing the Title 42 Process. CBP is the sub-agency of DHS that is responsible for the initial processing and detention of noncitizens who are apprehended at or between U.S. ports of entry. CBP is responsible for implementing the Title 42 Process and conducts expulsions pursuant to its terms.

19.      Defendant William A. Ferrara is the Executive Assistant Commissioner of CBP's Office of Field Operations ("OFO"). He is sued in his official capacity. OFO is the largest component of CBP and is responsible for border security, including immigration and travel through U.S. ports

---

[1] By naming defendants, Plaintiffs do not concede that any Defendant's appointment was valid.

of entry.  Defendant Ferrara is a supervisory official responsible for implementing the Title 42 Process at ports of entry.

20.     Defendant Rodney S. Scott is the Chief of U.S. Border Patrol.  He is sued in his official capacity.  Border Patrol is responsible for border security between ports of entry.  Defendant Scott is a supervisory official responsible for implementing the Title 42 Process between ports of entry.

21.     Defendant Jonathan Fahey is the Senior Official Performing the Duties of the Director of ICE.  ICE is the sub-agency of DHS that is responsible for carrying out removal orders and overseeing immigration detention.  Defendant Fahey is sued in his official capacity.

22.     Defendant Alex M. Azar II is the Secretary of Health and Human Services ("HHS"), which is a cabinet-level department of the U.S. government.  He is sued in his official capacity.  In that capacity, Defendant Azar is responsible for the oversight of the Centers for Disease Control and Prevention ("CDC"), which is a component of HHS.

23.     Defendant Dr. Robert R. Redfield, M.D., is the Director of the CDC.  He is sued in his official capacity.  In that capacity, he authorized the Title 42 Process at issue in this case.

## FACTS

### Statutory Protections For Asylum Seekers

24.     Vulnerable families have long fled persecution and danger in their home countries and journey to the United States seeking safety.  Currently, many of them come from El Salvador, Honduras, Guatemala, and Mexico, which have been plagued with escalating rates of violence and weakened state institutions.  Others come from countries such as Ecuador or Brazil, where they have faced persecution based on their indigenous identities or political affiliations.  Many families from these countries are also fleeing gender-based, family-based, and other types of violence.

25.     These families, like other noncitizens, have statutory rights to seek relief in the United

States from persecution and torture.  Three forms of relief are possible: asylum, withholding of removal, and protection from torture.

26.     First, the Immigration and Nationality Act ("INA") provides that "[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . . ), irrespective of such alien's status," may apply for asylum.  8 U.S.C. § 1158(a)(1).  To qualify for asylum, a noncitizen must show a "well-founded fear of persecution" on account of a protected ground.  8 U.S.C. § 1101(a)(42)(A).

27.     Second, implementing this country's obligations under the 1951 Refugee Convention and the 1967 Protocol relating to the Status of Refugees, Congress has barred the removal of an individual to a country where it is more likely than not that he would face persecution on a protected ground.  8 U.S.C. § 1231(b)(3).  This form of relief, known as "withholding of removal," requires the applicant to meet a higher burden with respect to the likelihood of harm but is mandatory if the standard is met.

28.     Third, the Convention Against Torture ("CAT"), implemented by FARRA, prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture.  *See* 8 U.S.C. § 1231 note.

29.     Certain noncitizens who seek to enter the country without valid documents may be placed in a summary "expedited removal" system (in lieu of full removal proceedings under 8 U.S.C. § 1229a).  *See* 8 U.S.C. § 1225(b)(1).  But even in those expedited proceedings, Congress took pains to guarantee procedural protections for asylum seekers.  Specifically, if a noncitizen expresses fear of removal, she is entitled to a hearing with an asylum officer, subject to review by an Immigration Judge, to determine whether she has a "credible fear" of return.  *Id*. §§ 1225(b)(1)(A)(ii), 1225(b)(1)(B).  Once the noncitizen shows a credible fear—a "low screening

standard," 42 Cong. Rec. 25,347 (1996)—she is entitled to a full removal hearing with the attendant procedural protections, including the right to appeal, *see Grace v. Barr*, 965 F.3d 883, 902 (D.C. Cir. 2020) (explaining that one of the "important" goals of the statute was "ensuring that individuals with valid asylum claims are not returned to countries where they could face persecution").

## The Administration's Efforts to Bar Immigrants and the New Title 42 Process

30.     The Trump Administration, which established the Title 42 Process, has repeatedly and publicly stated that restricting access to asylum is among its key immigration objectives.  The President, his close advisors, and a succession of agency officers have assailed access to asylum and related forms of humanitarian protection.

31.     The Administration has sought to use numerous regulatory and policy mechanisms to prevent noncitizens from seeking protection in this country, but the Title 42 Process at issue here goes further than any of those efforts because where it applies it leaves almost no avenue open to seek protection.

32.     Before COVID-19, Administration officials discussed using public health powers to restrict immigration and circumvent the protections in the immigration laws.  White House advisors repeatedly proposed invoking the government's public health powers to impose immigration restrictions, and justifying those restrictions by pointing to diseases like influenza and mumps.

33.     Notwithstanding the clear statutory framework that requires the United States to allow people arriving at the border (with or without valid travel documents) to apply for asylum, withholding of removal, and CAT relief, President Trump announced on March 20, 2020, that the CDC would issue an order pursuant to the public health provisions of Title 42 of the U.S. Code

"to suspend the introduction of all individuals seeking to enter the U.S. without proper travel documentation" across the northern and southern borders.  The President stated that the order would be executed by "immediately returning" such individuals "without delay."

34.     The specific provision of Title 42 invoked by the Administration was § 265.  That provision dates to 1893 and was later reenacted in substantially the same language in the Public Health Service Act of 1944.  Section 265 provides in relevant part: The Surgeon General may "prohibit . . . the introduction of persons or property" from designated places where "by reason of the existence of any communicable disease in a foreign country there is serious danger of the introduction of such disease into the United States."[2]

35.     Deportation has never been an available mechanism under § 265, and in fact, § 265 applies to both noncitizens and citizens.  Rather, the Public Health Service Act prescribes certain civil and criminal penalties for violations of § 265, including "a fine of not more than $1,000 or . . . imprisonment for not more than one year, or both."  42 U.S.C. § 271(a).

36.     Although § 265 and its predecessors have existed since 1893, no regulation implementing that statute has ever authorized the broad immigration powers Defendants are claiming here.

37.     To exercise this new immigration power, the CDC thus issued a new regulation, without advance notice and comment, on the same day as the President's announcement.  *See* Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 16559-01 (Mar. 24, 2020) (effective date Mar. 20, 2020).

38.     Specifically, the regulation added a new provision, 42 C.F.R. § 71.40, which provides that

---

[2] In 1966, the Surgeon General's § 265 authority was transferred to what is now HHS.  In 2001, HHS delegated this authority to the CDC.  The President's functions under § 265 were assigned to the Secretary of HHS in a 2003 executive order.

the CDC may prohibit the "introduction into the United States of persons" from foreign countries. 85 Fed. Reg. at 16,563; *see* 42 C.F.R. § 71.40(a).  The public notice of the regulation describes the "introduction of persons" in 42 U.S.C. § 265 to "encompass those who have physically crossed a border of the United States and are in the process of moving into the interior in a manner the [CDC] Director determines to present a risk of transmission of a communicable disease."  85 Fed. Reg. at 16,563; *see* 42 C.F.R. § 71.40(b)(1).  And it describes "serious danger of the introduction of [a particular communicable] disease into the United States" in § 265 as meaning "the potential for introduction of vectors of the communicable disease into the United States, even if persons or property in the United States are already infected or contaminated with the [same] communicable disease."  85 Fed. Reg. at 16,563; *see* 42 C.F.R. § 71.40(b)(2).

39.     The regulation exempted U.S. citizens, lawful permanent residents ("LPRs"), and members of the armed forces, stating that the "CDC believes that, at present, quarantine, isolation, and conditional release, in combination with other authorities, while not perfect solutions, can mitigate" the spread of COVID-19 by such individuals.  85 Fed. Reg. at 16,564; *see* 42 C.F.R. § 71.40(e), (f).

40.     The regulation also provided that, if an order suspending the introduction of persons "will be implemented in whole or in part" by CBP, "then the [CDC] Director shall, in coordination with the Secretary of Homeland Security or other applicable Federal department or agency head, explain in the order the procedures and standards by which any authorities or officers or agents are expected to aid in the enforcement of the order."   85 Fed. Reg. at 16,564; *see* 42 C.F.R. § 71.40(d)(2).

41.     Pursuant to its new regulatory authority, the CDC issued a 30-day "Order Under Sections 362 and 365 of the Public Health Service Act [42 U.S.C. §§ 265, 268] Suspending Introduction of

Certain Persons From Countries Where a Communicable Disease Exists."  85 Fed. Reg. 17,060-17088 (Mar. 26, 2020) (effective date Mar. 20, 2020).  The Order directed the "immediate suspension of the introduction" of certain persons, referred to as "covered aliens."  85 Fed. Reg. at 17,067.  "Covered aliens" are those seeking to enter the United States through Canada or Mexico who "seek[] to enter . . . at POEs [ports of entry] who do not have proper travel documents, aliens whose entry is otherwise contrary to law, and aliens who are apprehended near the border seeking to unlawfully enter the United States between POEs."  85 Fed. Reg. at 17,061.  Section 365 of the Act, codified at 42 U.S.C. § 268, provides that "[i]t shall be the duty of the customs officers and of Coast Guard officers to aid in the enforcement of quarantine rules and regulations."  42 U.S.C. § 268(b).

42.     A principal justification for these restrictions was that "[t]he introduction into congregate settings in land POEs and Border Patrol stations" of such individuals risks "transmission and spread of COVID-19 to CBP personnel" and others.  85 Fed. Reg. at 17,061.

43.     The Order contemplates the forcible return of individuals back to the country from which they entered (Canada or Mexico), their home country, or another location.  85 Fed. Reg. at 17,067.

44.     In addition to repeating the regulatory exceptions for U.S. citizens and LPRs, the Order exempts from the ban the spouses and children of citizens and LPRs (whether or not they have valid documents); persons from foreign countries with valid travel documents; and persons from countries in the visa waiver program who present at ports of entry.  85 Fed. Reg. at 17,061.  The visa waiver program applies to nationals of 39 countries.

45.     The Order states that DHS customs officers could, in their discretion, determine that a noncitizen "should be excepted [from the Order] based on the totality of the circumstances, including consideration of significant law enforcement, officer and public safety, humanitarian,

and public health interests."  85 Fed. Reg. at 17,061.  Other than stating that a supervisor must approve such exceptions, the Order contains no standards or further procedures for exercising that discretion.  *See id.*

46.     The Order and regulation are silent on their application to individuals seeking asylum, withholding of removal, or CAT protection.

47.     The March 20 Order was extended for an additional 30 days on April 20, 2020.  *See* Extension of Order Under Sections 362 and 365 of the Public Health Service Act, 85 Fed. Reg. 22,424 (Apr. 22, 2020) (effective date Apr. 20, 2020).

48.     On May 20, 2020, the CDC extended the Order indefinitely, and amended it to cover both land and coastal ports of entry and Border Patrol stations.  *See* Amendment and Extension of Order Under Sections 362 and 365 of the Public Health Service Act, 85 Fed. Reg. 31,503 (May 26, 2020) (effective date May 21, 2020).

49.     As with the prior two 30-day Orders, a principal justification articulated for the indefinite Order was the danger to border agents who would have to inspect persons who come without documents.

50.     The CDC acknowledged that there were alternatives to expulsion but concluded that it was not worth the resources for those who lacked documents.  The CDC also presumed, without evidence, that those without documents covered by the Order would lack a means of self-quarantining.

51.     CDC suggested in the May 20 Order that there has been a reduced rate of transmission and that this is due to reduced number of "covered aliens" at ports of entry and border patrol stations. CDC offered no evidence for this claim.

52.     Defendants issued a subsequent, substantially similar Final Rule, and reissued the CDC

order pursuant to that Rule.  Control of Communicable Diseases; Foreign Quarantine: Suspension of the Right To Introduce and Prohibition of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 56,424 (Sept. 11, 2020) (effective date Oct. 13, 2020); Order Suspending the Right To Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 85 Fed. Reg. 65,806, 65,807-08 (Oct. 16, 2020) (effective date Oct. 13, 2020).

**DHS's Implementation of the Title 42 Process**

53.    Although the March CDC Order was issued by the CDC, and the regulation provides that the CDC and DHS must coordinate in developing corresponding procedures and standards, 42 C.F.R. § 71.40(d)(2), the Order states that it was CBP that "developed an operational plan for implementing the order."  85 Fed. Reg. at 17,067.

54.    On April 2, 2020, CBP issued a memorandum ("CBP Memo") describing the agency's implementation of the Title 42 Process, an effort it calls "Operation Capio."  CBP Memo 2.

55.    To determine whether a noncitizen is "subject to the CDC Order," the CBP Memo instructs officers to use "experience" and "physical observation" to determine whether they "believe[] that it is more likely than not" that the person whom they encounter in "[e]nforcement efforts on the SWB [southwestern border] and NB [northern border]," anywhere "within the area of operation of a Border Patrol station or POE operated by CBP," is "seeking to enter" without proper travel documents at or between POEs.  CBP Memo 1.

56.    Covered noncitizens "will be transported to the nearest POE and immediately returned to Mexico or Canada, depending on their point of transit."  CBP Memo 3.  Those who are "not amenable to immediate expulsion to Mexico or Canada, will be transported to a dedicated facility for limited holding prior to expulsion" to their home country.  *Id*.  Such facilities can be "a tent,

soft-sided facility or predesignated CBP/USBP facility with dedicated space." *Id.*

57.     The CBP Memo provides no instructions on medical screenings or other procedures for determining whether a covered noncitizen may have COVID-19.

58.     Families who arrive in this country together, like Plaintiffs, are subject to the Title 42 Process.  Indeed, Defendants subjected over 21,500 members of such families to the Title 42 Process between March and December, 2020.

59.     The Plaintiff families in this case came to the United States fleeing great danger in their home countries.  All of them seek to apply for asylum, withholding, and protection for torture, but all of them have been denied access to these procedural protections.

60.     The Title 42 Process is not justified by public health concerns.  A principal justification is that border agents will have greater exposure if they are required to process individuals who lack documents and that it is therefore necessary to deport such individuals to reduce the risk to agents.  But, as Plaintiffs' facts illustrate, arranging for air transport to deport individuals will often take longer than the time in which DHS could process, quarantine, and/or release families.  Ms. Pereira-De Souza and her children, for example, have been detained in DHS custody for over a month while they await expulsion.  In addition, where the individual shows no signs of COVID-19, as is likely true for many of the families at issue here, the risk is even less.

**The Title 42 Process Is An Extreme Outlier**

61.     The Title 42 Process at issue here follows other invocations of COVID-19 by the Administration to ban immigration, but it is far more extreme in seeking to eliminate statutory protections for vulnerable noncitizens.  And it is not only a ban on entry, but provides for summary expulsion for those who entered the country.

62.     For example, in February and March of 2020, President Trump issued a series of

Proclamations under 8 U.S.C. § 1182(f) to prohibit the entry of certain persons traveling from China, Iran, and certain European countries where COVID-19 was prevalent.  However, unlike the Title 42 Process, those Proclamations expressly stated that they did not restrict "any individual's eligibility for asylum, withholding of removal, or protection under the regulations issued pursuant to the legislation implementing the Convention Against Torture."

63.     At the same time, the government continues to permit large numbers of people to enter the United States.  In addition to the Title 42 Process at issue here, DHS issued two other orders on March 20, 2020, which temporarily suspended "non-essential" travel from Canada and Mexico. Under these orders, which have been extended every 30 days since, permitted "essential travel" broadly includes citizens, returning LPRs, individuals traveling for medical purposes, individuals traveling to attend education institutions, individuals traveling to work in the United States (e.g., agricultural workers), truck drivers moving cargo between the United States and Canada, emergency responders, and those engaged in military travel and operations.

64.     On May 22, 2020, former Acting Secretary of Homeland Security Chad Wolf issued an "exemption" from the President's Proclamations under 8 U.S.C. § 1182(f), which additionally permitted certain professional athletes, their staff, and their dependents to enter the country.  Mr. Wolf determined that it served "the national interest" to permit noncitizens who compete in, inter alia, the National Basketball Association, the Professional Golfers' Association Tour, and the National Hockey League, to enter the country and participate in sporting events.

65.     Hundreds of thousands of individuals continue to move back and forth across the U.S.-Mexico border every day.  Since March 20, 2020, when the Title 42 Process first went into effect, numerous individuals exempted from the ban have come into the United States.

**Class Action Allegations**

66.      Plaintiffs bring this action under Federal Civil Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of themselves and a class of all other persons similarly situated.

67.      Plaintiffs seek to represent the following Proposed Class: All noncitizens who arrive in the United States as a family unit of at least one child and that child's parent or legal guardian, who are or will be subjected to the Title 42 Process.

68.      The proposed class satisfies the requirements of Rule 23(a)(1) because the class is so numerous that joinder of all members is impracticable.  According to Defendants' own publicly available data, over 21,000 members of families that fit the class definition have already been subjected to the Title 42 Process.  The proposed class also includes numerous future families.

69.      The class meets the commonality requirements of Rule 23(a)(2).  The members of the class are subject to a common practice: subjection to the Title 42 Process, despite the statutory protections Congress has enacted.  By definition, all class members are or will be subject to that practice.  The lawsuit raises numerous questions of law common to members of the proposed class, including: whether § 265 authorizes expulsions; whether the Title 42 Process violates the immigration statutes; and whether the promulgation of the Title 42 Process satisfied the APA's requirements.  Plaintiffs and proposed class members also share a common core of facts: all are families who came (or will come) to the United States and were (or will be) subsequently taken into DHS custody; all have been (or will be) subjected to the Title 42 Process; and none have been afforded the protections provided under the nation's immigration laws.

70.      The proposed class meets the typicality requirements of Rule 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class.  Plaintiffs are three families

who came to the border and were subjected to the Title 42 Process and threatened with swift expulsion, without being afforded any of the statutory protections they should have received.

71.     The proposed class meets the adequacy requirements of Rule 23(a)(4).  The representative Plaintiffs seek the same relief as the other members of the class—among other things, an order declaring the Title 42 Process unlawful as applied to families, and an injunction against the application of the Title 42 Process.  In defending their rights, Plaintiffs will defend the rights of all proposed class members fairly and adequately.

72.     The proposed class is represented by counsel from the American Civil Liberties Union Foundation Immigrants' Rights Project and other experienced attorneys.  Proposed Class Counsel have extensive experience litigating class action lawsuits and other complex systemic cases in federal court on behalf of migrant children, families, and other noncitizens facing deportation.

73.     The proposed class also satisfies Rule 23(b)(2).  Defendants have acted (or will act) on grounds generally applicable to the class by subjecting them to the Title 42 Process rather than affording them the protections of the immigration laws.  Injunctive and declaratory relief is therefore appropriate with respect to the class as a whole.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

#### (*ULTRA VIRES*, VIOLATION OF THE PUBLIC HEALTH SERVICE ACT, 42 U.S.C. § 265, AND THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A))

74.     All of the foregoing allegations are repeated and realleged as if fully set forth herein.

75.     The APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

76.     Title 42 of the U.S. Code does not authorize the expulsion of noncitizens from the United

States.

77.     Title 42 of the U.S. Code also does not authorize the expulsion of noncitizens from the

United States without affording them the statutory protections provided under the INA.  As a result,

the application of the Title 42 Process to Plaintiffs, which will result in their expulsion from the

United States, is contrary to law.  *See* 5 U.S.C. § 706(2)(A).

78.     The Title 42 Process, which was purportedly established pursuant to the authority of 42

U.S.C. § 265, was not authorized by that provision and is *ultra vires*.

79.     The application of the Title 42 Process to Plaintiffs is contrary to law.  *See* 5 U.S.C.

§ 706(2)(A).

**SECOND CLAIM FOR RELIEF**

**(ASYLUM: VIOLATION OF 8 U.S.C. § 1158, ASYLUM, AND ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 706(1), 706(2)(A))**

80.     All of the foregoing allegations are repeated and realleged as if fully set forth herein.

81.     The INA provides, with certain exceptions, that "[a]ny alien who is physically present in

the United States or who arrives in the United States (whether or not at a designated port of arrival

and including an alien who is brought to the United States after having been interdicted in

international or United States waters), irrespective of such alien's status, may apply for asylum in

accordance with this section . . . ."  8 U.S.C. § 1158(a)(1).

82.     Defendants' application of the Title 42 Process to Plaintiffs has prevented them from

applying for asylum in accordance with 8 U.S.C. § 1158(a)(1), and was therefore contrary to law.

*See* 5 U.S.C. § 706(2)(A).

83.     In addition, the APA provides relief for a failure to act: "The reviewing court shall . . .

compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

84.     By refusing to grant Plaintiffs the meaningful opportunity to apply for asylum to which

they are entitled, Defendants have withheld and unreasonably delayed actions mandated by the statute.  5 U.S.C. § 706(1).

### THIRD CLAIM FOR RELIEF

### (VIOLATION OF 8 U.S.C. § 1231(b)(3), WITHHOLDING OF REMOVAL, AND ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 706(1), 706(2)(A))

85.     All of the foregoing allegations are repeated and realleged as if fully set forth herein.

86.     The "withholding of removal" statute, INA § 241(b)(3), *codified at* 8 U.S.C. § 1231(b)(3), bars the removal of an individual to a country where it is more likely than not that he would face persecution.

87.     Defendants applied the Title 42 Process and regulation to Plaintiffs without this required safeguard.  As a result, Defendants' actions against Plaintiffs are contrary to law.  *See* 5 U.S.C. § 706(2)(A).

88.     In addition, by refusing to grant Plaintiffs the procedural protections to which they are entitled, Defendants have withheld and unreasonably delayed actions mandated by the statute.  5 U.S.C. § 706(1).

### FOURTH CLAIM FOR RELIEF

### (VIOLATION OF THE FOREIGN AFFAIRS REFORM AND RESTRUCTURING ACT OF 1998, CODIFIED AT 8 U.S.C. § 1231 NOTE, AND ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 706(1), 706(2)(A))

89.     All of the foregoing allegations are repeated and realleged as if fully set forth herein.

90.     FARRA prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture.

91.     Defendants applied the Title 42 Process and regulation to Plaintiffs in violation of FARRA and without adequate safeguards against their return to a country where it is more likely than not that they would face torture.  As a result, Defendants' actions against Plaintiffs are contrary to law.

*See* 5 U.S.C. § 706(2)(A).

92.    In addition, by refusing to grant Plaintiffs the procedures to which they are entitled, Defendants have withheld and unreasonably delayed actions mandated by the statute.  5 U.S.C. § 706(1).

### FIFTH CLAIM FOR RELIEF

### (VIOLATION OF 8 U.S.C. § 1101, ET SEQ., AND ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 706(1), 706(2)(A))

93.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

94.    The INA, 8 U.S.C. § 1101, *et seq.*, sets out the sole mechanisms established by Congress for the removal of noncitizens.

95.    The INA provides that removal proceedings before an immigration judge under 8 U.S.C. § 1229a is "the sole and exclusive procedure" by which the government may determine whether to remove an individual, "[u]nless otherwise specified" in the INA.  8 U.S.C. § 1229a(a)(3).  One mechanism otherwise specified in the INA is the expedited removal system, including its credible fear screening process.  8 U.S.C. § 1225(b)(1).

96.    The Title 42 Process creates an alternative removal mechanism.  The Title 42 Process purports to operate outside of the immigration laws set forth by Congress in Title 8.

97.    Because the Title 42 Process provides for the expulsion of Plaintiffs without the procedures specified in the INA, it violates 8 U.S.C. § 1229a and the INA.

98.    As a result, Defendants' actions against Plaintiffs were contrary to law.  *See* 5 U.S.C. § 706(2)(A).

99.    In addition, by refusing to grant Plaintiffs access to the procedures specified in the INA, Defendants have withheld and unreasonably delayed actions mandated by the statute.  5 U.S.C. § 706(1).

## SIXTH CLAIM FOR RELIEF

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A))

100.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

101.    Defendants' actions are arbitrary, capricious, and contrary to law.  Defendants have not articulated a reasoned explanation for their decision to apply the Title 42 Process to families; failed to consider relevant factors in applying the Title 42 process to them, including their fear of persecution and torture in their home countries; relied on factors Congress did not intend to be considered; failed to consider reasonable alternatives that were less restrictive; and offered no sufficient explanation for their decision to expel them from the country.

102.     Plaintiffs' subjection to the Title 42 Process is arbitrary, capricious, and contrary to law because it also departs from the agency's existing policies prohibiting the return of individuals who fear persecution or torture, without providing a reasoned explanation for departing from these policies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray this Court to:

a.    Certify a Class of: All noncitizens who arrive in the United States as part of a family unit including at least one child and that child's parent or legal guardian, who are or will be subjected to the Title 42 Process;

b.    Appoint the undersigned as Class Counsel;

c.    Declare unlawful the Title 42 Process as applied to Plaintiffs and Class Members;

d.    Enter an order enjoining Defendants from applying the Title 42 Process to Plaintiffs and Class Members;

e.    Enter an order providing relief for Plaintiffs and Class Members by ordering that Defendants stay their expulsion, remove them from the Title 42 Process, and afford them the

procedures guaranteed by the INA including access to asylum, withholding of removal, CAT relief, and all other forms of relief to which they are eligible;

f.      Award Plaintiffs' counsel reasonable attorneys' fees under the Equal Access to Justice Act, and any other applicable statute or regulation; and

g.      Grant such further relief as the Court deems just, equitable, and appropriate.

Dated: January 12, 2021

Respectfully submitted,

/s/ Celso J. Perez
Celso J. Perez (D.C. Bar No. 1034959)
Lee Gelernt*
Daniel A. Galindo*
Omar Jadwat*
Ming Cheung*
American Civil Liberties Union Foundation,
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2600

Stephen B. Kang*
Cody Wofsy*
Morgan Russell*
American Civil Liberties Union Foundation,
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 343-0770

Andre Segura
Kathryn Huddleston
Rochelle Garza
Brantley Shaw Drake
American Civil Liberties Union Foundation
of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, Texas 77007
Tel. (713) 942-8146

Robert Silverman*
Irit Tamir*
Oxfam America
Boston, MA 02115, Suite 500
Tel: (617) 482-1211

Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation of
the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
Tel: (202) 457-0800

Tamara F. Goodlette*
Refugee and Immigrant Center for
Legal Education and Legal Services
(RAICES)
802 Kentucky Avenue
San Antonio, TX 78201
Tel: (210) 960-3206

Jamie Crook (D.C. Bar No. 1002504)
Center for Gender & Refugee
Studies 200 McAllister St.
San Francisco, CA 94102
Tel: (415) 565-4877

*Attorneys for Plaintiff*

*\*Pro hac vice application forthcoming*