**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NANCY GIMENA HUISHA-HUISHA, et al., | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | )  No. 1:21-CV-00100-EGS |
| | ) |
| DAVID PEKOSKE, Acting Secretary of Homeland | ) |
| Security, in his official capacity, et al., | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ........................................................................................................................ 5

   I. THE PROPOSED CLASS SATISFIES RULE 23(a)'S REQUIREMENTS ......................... 6

     A. The Proposed Class is Numerous....................................................................... 6

     B. The Class Presents Common Questions of Law and Fact.................................... 9

     C. Plaintiffs' Claims are Typical of Class Members' Claims................................ 11

     D. Plaintiffs and Plaintiffs' Counsel Will Adequately Protect the Interests of the Proposed Class ............................................................................................................... 13

   II. THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS ..................... 14

CONCLUSION.................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*A.H. v. Sessions*,
  905 F.3d 1137 (9th Cir. 2018) ................................................................. 9

*Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States
  v. Pompeo ("Afghan & Iraqi Allies"),*
  334 F.R.D. 449 (D.D.C. 2020) ........................................................ 6, 9, 12

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ............................................................. 14

*Bynum v. District of Columbia*,
  214 F.R.D. 27 (D.D.C. 2003) ........................................................ 11,12, 14

*Coleman ex rel. Bunn v. District of Columbia*,
  306 F.R.D. 68 (D.D.C. 2015) ........................................................... passim

*Damus v. Nielsen*,
  313 F. Supp. 3d 317 (D.D.C. 2018) ................................................ 5, 11, 13

*DL v. District of Columbia*,
  302 F.R.D. 1 (D.D.C. 2013) .............................................................. 6, 7, 8

*DL v. District of Columbia*,
  713 F.3d 120 (D.C. Cir. 2013) ............................................................... 9

*DL v. District of Columbia*,
  860 F.3d 713 (D.C. Cir. 2017) ............................................................. 14

*Franco-Gonzalez v. Napolitano*,
  No. 10-CV-2211, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) ........................... 14

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ........................................................................ 9, 10

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*,
  446 U.S. 318 (1980) ........................................................................... 6

*Hardy v. District of Columbia*,
  283 F.R.D. 20 (D.D.C. 2012) ............................................................... 11

*Howard v. Liquidity Servs. Inc.*,
  322 F.R.D. 103 (D.D.C. 2017) ............................................................. 10

*J.D. v. Azar*,
  925 F.3d 1291 (D.C. Cir. 2019) ..................................................................... passim

*Kifafi v. Hilton Hotels Ret. Plan*,
  189 F.R.D. 174 (D.D.C. 1999) ................................................................................... 9

*Ms. L. v. U.S Immigration & Customs Enf't*,
  331 F.R.D. 529 (S.D. Cal. 2018) ....................................................................... 6, 13

*N.S. v. Hughes*,
  __ F.R.D. __, No. 1:20-CV-101-RCL, 2020 WL 2219441 (D.D.C. May 7, 2020) ........... 6, 7, 8

*N.S. v. Hughes*,
  __ F.R.D. __, No. 1:20-CV-101-RCL, 2020 WL 4260739 (D.D.C. July 24, 2020) ................. 6

*Nio v. U.S. Dep't of Homeland Sec.*,
  323 F.R.D. 28 (D.D.C. 2017) ................................................................... 5, 11, 15

*O.A. v. Trump*,
  404 F. Supp. 3d 109 (D.D.C. 2019) ......................................................................... 5

*P.J.E.S. v. Wolf*,
  __ F. Supp. 3d. ___, No. 20-CV-2245 (EGS), 2020 WL 6770508 (D.D.C. Nov. 18, 2020)
  ..................................................................................................................... passim

*R.I.L-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) .............................................................. 6, 8, 9, 14

*Ramirez v. U.S. Immigration & Customs Enf't*,
  338 F. Supp. 3d 1 (D.D.C. 2018) ...................................................................... passim

*Samma v. U.S. Dep't of Defense*,
  No. 20-CV-1104 (ESH), 2020 WL 4501000 (D.D.C. Aug. 4, 2020) ......................... 5

*Saravia v. Sessions*,
  280 F. Supp. 3d 1168 (N.D. Cal. 2017) ........................................................... 9, 13

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ................................................................................................ 5

*Shelton v. Bledsoe*,
  775 F.3d 554 (3d Cir. 2015) ................................................................................... 14

*Taylor v. D.C. Water & Sewer Auth.*,
  241 F.R.D. 33 (D.D.C. 2007) .................................................................................... 6

*Thorpe v. District of Columbia*,
  303 F.R.D. 120 (D.D.C. 2014) ............................................................................. 9, 10

*Twelve John Does v. District of Columbia*,
   117 F.3d 571 (D.C. Cir. 1997) ............................................................................. 13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................ 9, 10, 11, 15

**Statutes**

42 U.S.C. § 265 ........................................................................................................... 3

**Other Authorities**

Camilo Montoya-Galvez, *Texas Detention Facility Becomes Staging Ground for Expulsions of
   Migrant Families with Children*, CBS News (Oct. 29, 2020),
   https://www.cbsnews.com/news/ice-migrant-families-expulsion-karnes-city-texas-detention-
   center/ ................................................................................................................... 8

U.S. Customs and Border Protection and U.S. Border Patrol, "Operation Capio" Memo ("CBP
   Memo"), *available at* https://www.documentcloud.org/documents/6824221-COVID-19-
   CAPIO.html ..................................................................................................... 3, 4

William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2014) ........................................... 6, 7

Wright, Miller & Kane, *Federal Practice & Procedure* vol. 7A § 1763 (3d ed. 2005) ................. 9

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. 1, 5, 14

Fed. R. Civ. P. 23(a) .......................................................................................... 1, 5, 14, 16

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 6

Fed. R. Civ. P. 23(a)(2) ......................................................................................... 9, 10

Fed. R. Civ. P. 23(a)(3) ............................................................................................. 11

Fed. R. Civ. P. 23(a)(4) ............................................................................................. 13

Fed. R. Civ. P. 23(b) .............................................................................................. 14

Fed. R. Civ. P. 23(b)(2) ..................................................................................... passim

**Regulations**

85 Fed. Reg. 16,559 (Mar. 24, 2020) ........................................................................... 3

85 Fed. Reg. 17,060 (Mar. 26, 2020) ........................................................................... 3

85 Fed. Reg. 22,424 (Apr. 22, 2020) ................................................................. 3

85 Fed. Reg. 31,503 (May 26, 2020) ................................................................. 3

85 Fed. Reg. 56,424 (Sept. 11, 2020) ............................................................... 3

85 Fed. Reg. 65,806 (Oct. 16, 2020)............................................................. 3, 8

**INTRODUCTION**

A class action lawsuit is appropriate to challenge Defendants' unlawful practice of summarily expelling vulnerable families with minor children under their shadow deportation system, referred to here as the "Title 42 Process" or "Title 42 Policy."  Title 42 does not authorize expulsions, and even if it authorized expulsions of some noncitizens, it cannot do so in violation of the humanitarian protections Congress has established.

Under longstanding statutory safeguards protecting asylum seekers, families such as Plaintiffs are lawfully entitled to assert claims for asylum and related forms of humanitarian protection. Under the Title 42 Process, however, Defendants have instead funneled Plaintiffs into an alternative immigration system based on an unprecedented and unlawful series of Orders issued by the Centers for Disease Control and Prevention ("CDC"), which purport to authorize the expulsion of families without any asylum hearing.  The Orders are based on the government's supposed expulsion powers under the public health provisions of Title 42 of the U.S. Code.

Plaintiffs seek to certify the following class under Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All noncitizens who (1) are or will be in the United States; (2) come to the United States as a family unit composed of at least one child under 18 years old and that child's parent or legal guardian; and (3) are or will be subjected to the Title 42 Process.

The proposed class readily satisfies the requirements of Rule 23.

The proposed class currently includes hundreds of families who are subjected to the Title 42 Process every month, as well as future class members, which is sufficient to satisfy numerosity. The class raises common legal questions that will generate common answers, including whether the public health laws in Title 42 authorize expulsions, and if so, whether those expulsions violate numerous statutory proscriptions in the Immigration and Nationality Act ("INA") designed to protect asylum seekers.  The class also raises common factual issues because Plaintiffs and class

1

members are all families subject to the same practice of summary expulsion under the Title 42 Process, without receiving any of the procedures provided in longstanding immigration statutes protecting such vulnerable families.  Plaintiffs' legal claims are typical of those whom they seek to represent—that is, other family units who are or will be subjected to the Title 42 Process. Plaintiffs are also adequately represented by lead counsel, the American Civil Liberties Union Foundation Immigrants' Rights Project, as well as other organizations with significant experience in litigating class actions and cases involving the rights of noncitizens.

Plaintiffs' proposed class likewise satisfies Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Defendants are summarily expelling families under the Title 42 Process without any of the procedures provided in the immigration statutes.  Accordingly, the class as a whole is entitled to an order enjoining Defendants from applying the Title 42 Process to Plaintiffs and class members.

In the only other class action concerning the Title 42 Process, this Court recently granted provisional certification under Rule 23(b)(2) of a nationwide class of unaccompanied noncitizen children subject to the Process.  *P.J.E.S. v. Wolf*, __ F. Supp. 3d. ___, No. 20-CV-2245 (EGS), 2020 WL 6770508, at *7 (D.D.C. Nov. 18, 2020) (Sullivan, J., adopting report and recommendation of Harvey, J.); *see also id.* at *23-26 (report and recommendation).  The reasons for granting class certification in that case apply equally here.  The Court should accordingly grant

class certification here under Rule 23(b)(2).  Plaintiffs also request that they be appointed Class

Representatives and that the undersigned be appointed Class Counsel.[1]

## BACKGROUND

__The Title 42 Process__

As the Complaint describes, the Title 42 Process is a novel mechanism, established by the

Trump Administration in a series of regulations, orders, and guidance documents, that the

government is using to summarily expel noncitizens from the United States if they lack

immigration documentation such as a visa.  *See generally* Complaint (describing the Title 42

Process).[2]

The legal authority the government has invoked for this new expulsion system is 42 U.S.C.

§ 265, which provides in relevant part that the Surgeon General may "prohibit . . . the introduction

of persons and property" from designated places based on the danger posed by a communicable

disease.  The CDC has invoked this statute to "suspend[] the right to introduce and prohibit[] the

---

[1] Pursuant to LCvR 7(m), Plaintiff contacted counsel for the government for their position on this motion prior to filing.  Government counsel stated that Defendants oppose this motion.

[2] *See also* Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 16,559 (Mar. 24, 2020) (interim final rule) (effective date Mar. 20, 2020); Control of Communicable Diseases; Foreign Quarantine: Suspension of the Right To Introduce and Prohibition of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 56,424 (Sept. 11, 2020) (final rule) (effective date Oct. 13, 2020); Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17,060 (Mar. 26, 2020) (effective date Mar. 20, 2020); Extension of Order Under Sections 362 and 365 of the Public Health Service Act, 85 Fed. Reg. 22,424 (Apr. 22, 2020) (effective date Apr. 20, 2020); Amendment and Extension of Order Under Sections 362 and 365 of the Public Health Service Act, 85 Fed. Reg. 31,503 (May 26, 2020) (effective date May 21, 2020); Order Suspending the Right To Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 85 Fed. Reg. 65,806, 65,807-08 (Oct. 16, 2020) (effective date Oct. 13, 2020); U.S. Customs and Border Protection and U.S. Border Patrol, "Operation Capio" Memo ("CBP Memo"), *available at* https://www.documentcloud.org/documents/6824221-COVID-19-CAPIO.html.

introduction" of certain persons, referred to as "covered aliens." 85 Fed. Reg. at 65,812. "Covered aliens" are those seeking to enter the United States from Canada or Mexico "at POEs [ports of entry] who do not have proper travel documents, aliens whose entry is otherwise contrary to law, and aliens who are apprehended near the border seeking to unlawfully enter the United States between POEs." *Id.* at 65,808.

Noncitizens subject to the Title 42 Process "will be transported to the nearest POE and immediately returned to Mexico or Canada, depending on their point of transit." CBP Memo at 3. Those who are "not amenable to immediate expulsion to Mexico or Canada, will be transported to a dedicated facility for limited holding prior to expulsion" to their home country. *Id.*

The Title 42 Process does not exempt family units with minor children from forcible expulsion. To the contrary, such families are routinely subjected to the Title 42 Process and removed from the country under that asserted authority. *See* Declaration of Andrea Meza, ECF No. 5-2, at ¶¶ 6-8, 10 ("Meza Decl.").

**Named Plaintiffs and the Proposed Class**

Plaintiffs are six families that fled their countries to seek asylum and other forms of humanitarian protection in the United States. *See* ECF Nos. 4-1, 4-2, 4-3, 13-2, 13-3, 21-2. All face summary expulsion pursuant to the unlawful Title 42 Process, without any hearing or access to the protections to which they should be entitled under the immigration laws. *Id.*; *see also* Meza Decl. ¶¶ 12-17.

Plaintiffs' experiences are representative of those of other families subjected to Defendants' Title 42 Process. According to their own publicly available data, Defendants subjected approximately 21,500 members of families to the Title 42 Process between March and December 2020. *See* Declaration of Stephen B. Kang ("Kang Decl.") ¶ 4, Exh. A.

4

**ARGUMENT**

A plaintiff whose suit meets the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The "suit must satisfy the criteria set forth in [Rule 23(a)] (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id*.

Plaintiffs' proposed class satisfies all four of the Rule 23(a) prerequisites. The proposed class likewise meets the requirements for certification under Rule 23(b)(2). This Court should therefore certify the proposed class in keeping with the recent decision in *P.J.E.S.*, 2020 WL 6770508, at *7, *23-26, and numerous other decisions in this District certifying class action challenges to the federal government's administration of immigration programs. *See, e.g.*, *J.D. v. Azar*, 925 F.3d 1291, 1312-25 (D.C. Cir. 2019) (affirming certification of class of pregnant noncitizen children); *O.A. v. Trump*, 404 F. Supp. 3d 109, 154-60 (D.D.C. 2019) (certifying nationwide class of all asylum seekers subject to regulation rendering them ineligible for asylum for entering the country outside ports of entry); *Ramirez v. U.S. Immigration & Customs Enf't*, 338 F. Supp. 3d 1, 42-50 (D.D.C. 2018) (certifying nationwide class of unaccompanied children transferred from ORR to ICE custody after turning 18, without consideration of the least restrictive custody setting available); *Samma v. U.S. Dep't of Defense*, No. 20-CV-1104 (ESH), 2020 WL 4501000, at *1 (D.D.C. Aug. 4, 2020) (certifying class of noncitizen military service members challenging agency policy on naturalization procedures); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 328-35 (D.D.C. 2018) (provisionally certifying class of arriving asylum seekers found to have a credible fear of persecution or torture and detained by five regional ICE field offices); *Nio v. U.S. Dep't of Homeland Sec.*, 323 F.R.D. 28, 32-36 (D.D.C. 2017) (certifying nationwide class of

servicemember citizenship applicants subjected to heightened security screening program); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 179-83 (D.D.C. 2015) (provisionally certifying nationwide class of Central American mothers and children determined to have credible fear of persecution but denied release from immigration detention without individualized consideration); *see also, e.g.*, *Ms. L. v. U.S. Immigration & Customs Enf't*, 331 F.R.D. 529, 533 (S.D. Cal. 2018) (certifying nationwide class of migrant parents unlawfully separated from their children).

## I.     THE PROPOSED CLASS SATISFIES RULE 23(a)'S REQUIREMENTS

### A.  The Proposed Class is Numerous.

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Joinder does not have to be impossible—instead, [the] plaintiff must show 'only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate.'" *N.S. v. Hughes*, 335 F.R.D. 337, 352 (D.D.C. May 7, 2020) (quoting *DL v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013)), *reconsideration denied*, 2020 WL 4260739 (D.D.C. July 24, 2020). Courts in this District "have observed that a class of at least forty members is sufficiently large to meet this requirement." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007). However, "[t]here is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination 'requires examination of the specific facts of each case and imposes no absolute limitations.'" *Id.* (quoting *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)); *accord, e.g.*, *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo* ("*Afghan & Iraqi Allies*"), 334 F.R.D. 449, 458 (D.D.C. 2020). Moreover, "classes including future claimants generally meet the numerosity requirement due to the 'impracticality of counting such class members, much less joining them.'" *J.D.*, 925 F.3d at 1322 (quoting 1 Rubenstein,

Newberg on Class Actions § 3:15 (5th ed. 2014)).  "This is especially true when plaintiff seeks injunctive relief."  *N.S.*, 2020 WL 2219441, at *11.

"The numerosity requirement takes into account 'financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.'"  *Id.* (quoting *DL*, 302 F.R.D. at 11); *see also Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 80 (D.D.C. 2015) ("The additional factors that courts consider in assessing the practicability of joinder include: (1) 'judicial economy arising from avoidance of a multiplicity of actions'; (2) 'geographic dispersion of class members'; (3) 'size of individual claims'; (4) 'financial resources of class members'; and (5) 'the ability of claimants to institute individual suits.'") (quoting Newberg on Class Actions § 3:12 (5th ed. 2014)).  The D.C. Circuit has indicated that such "non-numerical considerations" affecting noncitizens—including their dispersion across different facilities, the fluidity of their custody, and their limited resources—favor certification.  *J.D.*, 925 F.3d at 1323.

Here, numerosity is easily satisfied for several reasons.  First, Defendants' own statistics show that at any given moment, dozens or hundreds of members of "family units" are detained for expulsion under the Title 42 Process.  From March to December 2020, Defendants subjected approximately 21,515 members of family units[3] to the Title 42 Process.  *See* Kang Decl. ¶ 4, Exh. A.  Since April 2020, Defendants have expelled the vast majority of asylum-seeking families pursuant to the Title 42 Process, instead of providing them full removal hearings or credible fear interviews as required under the immigration laws in Title 8 of the U.S. Code.  Kang Decl. ¶ 6,

---

[3] Because CBP's statistics track "encounters" at the border, repeated attempts to cross the border involving the same individual may be recorded as multiple encounters.  Even assuming a high number of repeat attempts, the numerosity requirement is easily met here.

Exh. B.[4]  In *P.J.E.S.*, this Court held the numerosity requirement met based on a smaller number of unaccompanied children subjected to the Title 42 Process over the same period.  *P.J.E.S.*, 2020 WL 6770508, at *7; *see also R.I.L-R*, 80 F. Supp. 3d at 181 (numerosity established by evidence that class consisted of 658 members of families detained by immigration authorities over a five-month period).  It follows that numerosity is also satisfied here.

Moreover, because the class includes future members who *will* be subjected to the Title 42 Process, and because the Process is in place indefinitely, 85 Fed. Reg. at 65,807, the class is larger than the number of family members subject to the Process at any given time, *see J.D.*, 925 F.3d at 1322.  The presence of such future class members renders joinder inherently impractical, thereby satisfying the purpose behind the numerosity requirement.  *See, e.g., N.S.*, 2020 WL 2219441, at *12 (finding numerosity in part because "Defendant admits that the challenged practice is ongoing, but those who will be arrested for suspected civil immigration violations in the future cannot be joined at this stage"); *DL*, 302 F.R.D. at 11 (certifying class in part because suit sought "prospective relief for future class members, whose identities are currently unknown and who are therefore impossible to join").

Second, joinder is impracticable because class members are typically held only for short periods of time with limited access to the outside world and potential counsel.  *See* Complaint; Meza Decl. ¶¶ 6, 8; *see also J.D.*, 925 F.3d at 1323 (stating that joinder may be impracticable in light of "fluidity" of custody, "the dispersion of class members across the country, and their limited resources"); *see also, e.g., Ramirez*, 338 F. Supp. 3d at 45 (finding "joinder impracticable" for

---

[4] The government has publicly stated that it is using the family detention center in Karnes County, Texas, solely to hold families being expelled under the Title 42 Process.  Camilo Montoya-Galvez, *Texas Detention Facility Becomes Staging Ground for Expulsions of Migrant Families with Children*, CBS News (Oct. 29, 2020), https://www.cbsnews.com/news/ice-migrant-families-expulsion-karnes-city-texas-detention-center/.

class of noncitizens due to "lack of geographic proximity of the proposed members and the inherently transitory nature of the class"); *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999) (geographical dispersion relevant to impracticability of joinder); *Afghan & Iraqi Allies*, 334 F.R.D. at 459 (same); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203 (N.D. Cal. 2017), *aff'd*, 905 F.3d 1137 (9th Cir. 2018) (finding joinder impracticable because minors "are frequently held in detention far from the location . . . where they would presumably have improved access to the assistance of their sponsors or any existing counsel").

**B. The Class Presents Common Questions of Law and Fact.**

To satisfy commonality, Plaintiffs must show that "there are questions of law or facts common to the class." Fed. R. Civ. P. 23(a)(2).  At bottom, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  "[P]laintiffs must bridge the 'gap' between individual claims of harm and the 'existence of a class of persons who have suffered the same injury as that individual.'"  *Thorpe v. District of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014) (quoting *Wal-Mart*, 564 U.S. at 352-53).  "[W]here plaintiffs allege widespread wrongdoing by a defendant . . . a uniform policy or practice that affects all class members bridges the gap."  *Id.* (internal quotation marks omitted).  Thus, "commonality is satisfied where there is 'a uniform policy or practice that affects all class members.'"  *R.I.L-R*, 80 F. Supp. 3d at 181 (quoting *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013)).  Such suits "by their very nature often present common questions satisfying Rule 23(a)(2)."  7A Wright, Miller & Kane, Federal Practice & Procedure § 1763 (3d ed. 2005).  Some cases "may involve many common issues that together provide a resolution, but 'even a single common question will do.'"  *Coleman*, 306 F.R.D. at 82 (quoting *Wal-Mart*, 564 U.S. at 359).

Plaintiffs' lawsuit raises numerous legal questions common to the proposed class, including: whether Title 42 authorizes the deportation of individuals, like Plaintiffs and proposed class members; and whether, even assuming Title 42 somehow could be construed to authorize deportations, it overrides the later-enacted immigration statutes protecting individuals fleeing persecution. The APA claim also raises common legal issues, including whether Defendants have provided a reasoned explanation for their failure to exempt families from the Title 42 Process, and whether Defendants considered multiple important aspects of the problem.

Any one of these common issues, standing alone, is enough to satisfy Rule 23(a)(2)'s permissive standard. *See Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 118 (D.D.C. 2017) (even a single common issue will do); *Coleman*, 306 F.R.D. at 82 (same); *Thorpe*, 303 F.R.D. at 145 (same). Thus, in the directly analogous commonality inquiry in *P.J.E.S.*, this Court held this requirement met "because the challenged CDC Orders are 'a uniform policy or practice that affects all class members.'" *P.J.E.S.*, 2020 WL 6770508, at *7.

Here, too, Plaintiffs and proposed class members also share a common core of facts: all are members of families who came (or will come) to the United States together and were taken into government custody; all are or will be subjected to the Title 42 Process; and none are afforded the procedures provided under the immigration laws designed to ensure their safety and protection. Plaintiffs and proposed class members thus "have suffered the same injury"—the threat of unlawful expulsion under Title 42 and the deprivation of the statutorily protected opportunity to seek humanitarian protections. *Wal-Mart*, 564 U.S. at 350 (quoting *Falcon*, 457 U.S. at 157). And that common injury is clearly "capable of classwide resolution." *Id.* Should the Court agree that Defendants' Title 42 Process violates the immigration statutes and the APA, all who fall within the class will benefit from the requested relief: an injunction preventing Defendants from expelling

families under the Title 42 Process.  Indeed, that is precisely the relief preliminarily afforded to the class of unaccompanied children in *P.J.E.S.*  Thus, a common answer as to the legality of the challenged policies and practices will "drive the resolution of the litigation."  *Ramirez*, 338 F. Supp. 3d at 45 (quoting *Wal-Mart*, 564 U.S. at 350).

Significantly, courts in this Circuit have made clear that "if there is a 'single' common question, 'factual variations among the class members will not defeat the commonality requirement.'"  *Damus*, 313 F. Supp. 3d at 332 (quoting *Hardy v. District of Columbia*, 283 F.R.D. 20, 24 (D.D.C. 2012)); *accord Nio*, 323 F.R.D. at 32.  Any factual differences that may exist among the proposed class members are not significantly material to their claims, which challenge Defendants' Title 42 Process as ultra vires and in violation of the immigration statues and the APA. *See J.D.*, 925 F.3d at 1321 ("The government notes the existence of certain factual variations among the class members—namely, their age, maturity, stage of pregnancy, mental health, length of sponsorship search, and ability to return to country of origin.  But the class members assert an entitlement to relief that is entirely unaffected by the myriad factual differences noted by the government.") (internal citation omitted).

C. **Plaintiffs' Claims are Typical of Class Members' Claims.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The typicality requirement is concerned with whether 'the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate.'"  *Coleman*, 306 F.R.D. at 83 (quoting *Wal-Mart*, 564 U.S. at 349). "While commonality requires a showing that the *members* of the class suffered an injury resulting from the defendant's conduct, the typicality requirement focuses on whether the *representatives* of the class suffered a similar injury from the same course of conduct."  *Bynum v. District of*

*Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003) (emphasis in original).  "A class representative satisfies the typicality requirement if the representative's claims are based on the same legal theory as the claims of the other class members and her injuries arise from the same course of conduct that gives rise to the other class members' claims."  *Coleman*, 306 F.R.D. at 83 (internal quotation marks omitted).

Plaintiffs' claims are typical of the claims of the proposed class, for largely the same reasons that the class presents common questions of law and fact.  Each proposed class member faces the same injury (being subjected to unlawful expulsion), based on the same government practice (the Title 42 Process), which is unlawful as to the entire class because it is ultra vires and violates the immigration laws and the APA.  Moreover, as with commonality, any factual differences between Plaintiffs and proposed class members are not material enough to defeat typicality.  *See Bynum*, 214 F.R.D. at 34-35 ("Factual variations between the claims of class representatives and the claims of other class members claims do not negate typicality. . . . Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims."); *see also, e.g.*, *Afghan & Iraqi Allies*, 334 F.R.D. at 461 ("The differences between the named Plaintiffs and the class members that Defendants highlight (applicants who are at different steps in the process and who are considered high-risk), do not undermine the relevant shared characteristics between the named Plaintiffs and the class as a whole.").  Accordingly, as in *P.J.E.S.*, typicality is easily satisfied here.  *See P.J.E.S.*, 2020 WL 6770508, at *7 (Plaintiff met "typicality requirement since Plaintiff's claims and the claims of the putative class 'stem from a unitary course of conduct—expulsion of unaccompanied non-citizen children' under the CDC Orders and 'are based on the same legal theories'").

**D. Plaintiffs and Plaintiffs' Counsel Will Adequately Protect the Interests of the Proposed Class.**

Rule 23(a)(4) requires that "[t]he representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation imposes two criteria on plaintiffs seeking to represent a class: '(1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *Ramirez*, 338 F. Supp. 3d at 47 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

Plaintiffs will fairly and adequately protect the interests of the proposed class, and therefore are adequate class representatives. Plaintiffs do not seek any unique or additional benefit from this litigation that may make their interests different from or adverse to those of absent class members. Instead, Plaintiffs' aim is to secure injunctive relief that will protect them and the entire class from the Defendants' challenged policy and enjoin the Defendants from further violations. Nor do Plaintiffs seek financial gain at the cost of absent class members' rights. Accordingly, Plaintiffs lack any antagonism with the class, their interests align squarely with the other proposed class members, and no collusion is present.

Here, proposed Lead Class Counsel are attorneys from the ACLU Immigrants' Rights Project, who collectively have extensive and diverse experience in complex immigration cases and class action litigation. *See generally* Kang Decl. Proposed Class Counsel have been appointed class counsel in a number of successful class action cases concerning the rights of noncitizens— including the *P.J.E.S.* class action enjoining the application of the Title 42 Process to unaccompanied children. *See P.J.E.S.*, 2020 WL 6770508, at *7, 16-17; *see also, e.g., Damus*, 313 F. Supp. 3d at 331; *Ms. L.*, 331 F.R.D. at 540-41; *Saravia*, 280 F. Supp. 3d at 1202, 1204-05;

13

*R.I.L-R*, 80 F. Supp. 3d at 181; *Franco-Gonzalez v. Napolitano*, No. 10-CV-2211, 2011 WL 11705815, at *13-14 (C.D. Cal. Nov. 21, 2011).[5]

## II.   THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS

In addition to satisfying the four requirements of Rule 23(a), a class must also come within one of the subsections of Rule 23(b).  Certification of a class under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).   Rule 23(b)(2) "impos[es] two requirements: (1) that defendant's actions or refusal to act are 'generally applicable to the class' and (2) that plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class."  *Bynum*, 214 F.R.D. at 37.  "The D.C. Circuit has explained that the purpose of Rule 23(b)(2) is to 'avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief.'"  *Ramirez*, 338 F. Supp. 3d at 48 (quoting *DL v District of Columbia*, 860 F.3d 713, 726 ((D.C. Cir. 2017)).  The Circuit has also specifically explained that another "principal purpose of Rule 23(b)(2) class actions is to enable class resolution of civil-rights claims alleging classwide deprivations of protected rights."  *J.D.*, 925 F.3d at 1314.  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct

---

[5] Multiple circuits have rejected the view that Rule 23 contains a separate ascertainability requirement.  *See, e.g.*, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 (9th Cir. 2017) (rejecting proposition that Rule 23 requires separate showing that there is "administratively feasible way to determine who is in the class"); *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) (holding that ascertainability showing is not required to certify Rule 23(b)(2) class seeking only declaratory and injunctive relief); *see also J.D.*, 925 F.3d at 1320 (observing that this question remains open in the D.C. Circuit).  Even assuming such a requirement exists, the proposed class here is readily ascertainable because membership in the class is defined by clear and objective criteria that are known to the government defendants, and identifying class members is administratively feasible.

is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* at 1314-15 (quoting *Wal-Mart*, 564 U.S. at 360).

Rule 23(b)(2)'s requirements are plainly met here.  Plaintiffs ask the Court to enjoin Defendants' policy—common to all class members—of expelling families under the Title 42 Process and doing so without affording them the procedures required by the immigration statutes. This includes Defendants' failure to provide class members with either full asylum hearings or credible fear interviews subject to immigration judge review, and to afford class members who pass their credible fear interviews with full removal proceedings.  A single injunction would protect all class members from this same practice.  *See, e.g.*, *id.* at 1315 (affirming class of pregnant unaccompanied children in government custody where "the class . . . can encompass anyone whose right to terminate her pregnancy is allegedly infringed by the government's policy"); *Nio*, 323 F.R.D. at 34-35 (certifying Rule 23(b)(2) class where "plaintiffs are only challenging the application of standardized [immigration] policies that generally apply to the class" and "[e]njoining these broad policies or declaring them unlawful is appropriate relief under Rule 23(b)(2)").

This relief would benefit Plaintiffs as well as all members of the proposed class in the same fashion.  *See Ramirez*, 338 F. Supp. 3d at 48 (holding Rule 23(b)(2) requirements satisfied where plaintiffs "challenged [DHS's] practice of failing to comply with [a statute]" and sought "relief requiring only such compliance" as to all class members).  As was true for the class of unaccompanied minors challenging the same policy challenged in this case, because Plaintiffs and the proposed class members are all subject to the same statutory violations due to Defendants' challenged practice, and because they seek singular injunctive and corresponding declaratory relief that remedy those injuries, certification under Rule 23(b)(2) is proper.  *See P.J.E.S.*, 2020 WL

15

6770508, at *7 (Rule 23(b)(2) satisfied "because the Government allegedly applied the same illegal CDC Orders to the Plaintiff and Subject Class, and the Plaintiff and Subject Class seek the same relief").

## CONCLUSION

The Court should certify the proposed Class under Rule 23(a) and 23(b)(2); appoint Plaintiffs as Class Representatives; and appoint the Plaintiffs' counsel from the ACLU Immigrants' Rights Project as Lead Class Counsel, and Plaintiffs' other undersigned counsel as Class Counsel.

Dated: January 28, 2021

Respectfully submitted,

/s/ Celso J. Perez

Stephen B. Kang*
Cody Wofsy*
Morgan Russell*
American Civil Liberties Union Foundation,
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 343-0770

Celso J. Perez (D.C. Bar No. 1034959)
Lee Gelernt*
Daniel A. Galindo*
Omar Jadwat*
Ming Cheung*
American Civil Liberties Union Foundation,
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2600

Andre Segura
Kathryn Huddleston
Rochelle Garza
Brantley Shaw Drake
American Civil Liberties Union Foundation
of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, Texas 77007
Tel: (713) 942-8146

Robert Silverman*
Irit Tamir*
Oxfam America
Boston, MA 02115, Suite 500
Tel: (617) 482-1211

Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation of
the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
Tel: (202) 457-0800

Tamara F. Goodlette*
Refugee and Immigrant Center for
Legal Education and Legal Services
(RAICES)
802 Kentucky Avenue
San Antonio, TX 78201
Tel: (210) 960-3206

Jamie Crook (D.C. Bar No. 1002504)
Karen Musalo
Center for Gender & Refugee Studies
200 McAllister St.
San Francisco, CA 94102
Tel: (415) 565-4877

Karla M. Vargas**
Texas Civil Rights Project
1017 W. Hackberry Ave.
Alamo, Texas 78516
Tel: (956) 787-8171

*Attorneys for Plaintiffs*

*Pro hac vice application forthcoming*
*\*\*Admitted pro hac vice*

17