## DECLARATION OF ALLISON HERRE

I, Allison Herre, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an attorney licensed to practice law in Ohio. Since July 2019, I have been the Managing Attorney for Proyecto Dilley (formerly the CARA Pro Bono Project and Dilley Pro Bono Project). Proyecto Dilley has provided pro bono legal services to asylum-seeking immigrant parents and their children who are detained by U.S. Immigration and Customs Enforcement ("ICE") at the South Texas Family Residential Center ("Dilley") in Dilley, Texas since the facility opened at the end of 2014. Our project provides direct representation in immigration proceedings through project staff as well as volunteers from all over the country.

2. I have been practicing law since 2012 during which time I have focused my practice on immigration law at both private and non-profit organizations. Immediately prior to joining Proyecto Dilley, I served as the director of Immigration Legal Services, for Catholic Charities of Southwestern Ohio in Cincinnati, Ohio.

3. This declaration is based on my personal experience working with noncitizen children and families detained at Dilley. I am also familiar with the facility after having visited Dilley almost daily prior to the outbreak of the COVID-19 pandemic and by regularly interacting with facility staff and ICE officers both before and during the COVID-19 pandemic.

4. Proyecto Dilley's volunteer-based model has allowed our project to represent the overwhelming majority of families who have been detained at Dilley. In 2015 we represented 10,804 families, in 2016, we represented 12,850 families; in 2017, we represented 13,291 families, in 2018, we represented 16,734, and in 2019, we represented 10,086 families.

5. Subsequent to the government's implementation of the Title 42 expulsion process, ICE's use of Dilley to detain asylum-seeking families dropped dramatically. In fact, since the start of the COVID-19 pandemic in March 2020, our office has only represented fewer than 500 families.

6. In a report filed by ICE Juvenile Coordinator Deane D. Dougherty with the District Court for the Central District of California on January 19, 2021, 194 beds of the 2,400 beds available at Dilley were occupied, an 8% total occupancy of the facility's total capacity. This capacity reflects what we have seen for many months in Dilley.

7. Our clients typically come to the United States fleeing great danger in their home countries, including El Salvador, Guatemala, Honduras, Brazil, Ecuador, Haiti, Mexico, Cuba, Venezuela, the Democratic Republic of the Congo, Romania, Angola, Uzbekistan, and many others.

8. The families we represent seek safety in the United States after experiencing unimaginable harm. For example, Ms. K is a young mother, who was kidnapped by her child's father and held hostage for two years during which time he beat her, raped her daily, and locked her and her child in the house for days without any food. The abuser held guns to her head and threatened to kill her many times. On one occasion, he beat her so severely that she went into premature labor and her child was born with weak lungs, which have made him susceptible to severe respiratory infections. When Ms. K and her one-year-old child arrived at the border, Ms. K had a fractured collar bone from the final beating she received before escaping her abuser. Her child became very ill and required hospitalization while detained by border patrol.

9. Another client, Ms. C, is from an ethnic minority in her home country. As a member of the minority ethnic group, Ms. C was beaten by her teachers in school, had rocks thrown at her, was denied medical care, and was prohibited from entering any public buildings, such as the police station and government benefits office. Ms. C's son was murdered by a man who is a member of the majority ethnic group because Ms. C's son tried to defend himself from the man's son who punched Ms. C's child. When Ms. C tried to report her son's murder, the police refused to permit her into the building and called her "dirty" and other slurs for the ethnic minority. The man later broke into Ms. C's home with a group of men and raped Ms. C, beat her son, and raped her daughter-in-law. The man has also beaten Ms. C's son on numerous occasions.

10. We recently represented the "L" Family that openly opposed their government's anti-capitalist policies by importing goods from the United States to sell in the family's store. As punishment for the family's defiance, the government sent police to Mr. and Ms. L's store where they ransacked and looted the store on at least two occasions, arrested Mr. and Ms. L, and tortured Mr. L while he was detained. The police repeatedly beat Mr. L in the groin so many times that he required hospitalization and surgery after police finally released him.

11. As of November 2020, it is my understanding that all of the families detained at Dilley are being processed under Title 8, rather than being subjected to immediate expulsion under Title 42. Prior to November 2020, the overwhelming majority of families that we represented and worked with were also placed in proceedings under Title 8.

12. Dilley has instituted policies to house, quarantine, isolate, process, and release immigrant families from the facility. Each family at the facility is put in the facility and quarantined for about fourteen days. All family members are tested for COVID-19 and either remain in quarantine, or if they test positive, are put in medical isolation for at least fourteen days after the positive test. If the family includes both a father

and mother, the fathers are held in a different wing of the facility apart from the mothers with their children.

13. Families who are detained in Dilley are housed in rather large solid-sided trailers, where they have access to beds, sinks, telephones, showers, bathrooms, and a sitting area. While most trailers in Dilley have capacity to hold up to six families at a time, until recently, each family was put in a trailer alone. Recently, DHS has sometimes put two or three families (mothers and children) together in a trailer, and sometimes put multiple fathers in a trailer together.

14. Many of our clients have recently reported that they were asked by facility staff if they would like to receive a COVID-19 vaccine. Clients who declined to receive a vaccine were provided with contact information for a health center close to their final destination and informed they could access the vaccine upon release from detention.

15. Typically, families who come to Dilley in Title 8 proceedings participate in interviews with the U.S. Citizenship and Immigration Services. During the interview, an asylum officer quickly determines whether the family has bona fide claim for protection from persecution or torture. If families receive a positive determination subsequent to their interview, they are processed into removal proceedings before an immigration judge and are eligible for release. They are then released, typically to the care of a sponsor in the United States who assumes responsibility for their care and housing.

16. Over the last five years, with the exception of a period of time between July 2019 and March 2020, more than 99% of the families represented by Proyecto Dilley received positive decision in their case and were released from detention.

17. Families in Title 8 proceedings can be screened, processed, and released from Dilley within 20 days, which is more than enough time for each family to complete 14 days of quarantine for COVID-19. In my experience, the vast majority of immigrant families we serve are well-suited for immediate release, because they have genuine claims for relief from persecution, pose no danger to society, and are not flight risks.

I declare under penalty of perjury under the laws of the United States of America and Texas that the foregoing is true and correct.

Executed on: February 5, 2021, in San Antonio, Texas, United States.

Signature: _____

Allison Herre