DECLARATION OF SAVITRI ARVEY

I, Savitri Arvey, pursuant to 28 U.S.C. § 1746, hereby declare:

**Summary**

1. As a migration policy advisor who has worked with hundreds of migrants being subjected to the Title 42 policy, I am deeply familiar with the harms that the policy has inflicted on migrant families.  The Title 42 policy has forced asylum-seeking families, including pregnant mothers and individuals with U.S. citizen children, to live in squalid and dangerous conditions in Mexico, often sleeping under bridges or on the street. More than 1 out of 5 of the asylum seekers I have worked with reported being kidnapped in Mexico, and many of the women were raped during their capture. The government's process for exempting certain families from Title 42 is an inadequate substitute for regular port processing of asylum seekers, all of whom have a right to be heard on their claims.

**Qualifications**

2. I am currently a Policy Advisor, within the Migrant Rights and Justice program at the Women's Refugee Commission ("WRC"), a non-profit organization that aims to improve the lives and protect the rights of women, children, and youth displaced by crisis and conflict. In this role, I advocate on regional protection issues for women, children, and families in Mexico and Central America. Before assuming this role, I worked as a consultant for WRC from March to June 2021 where I focused on issues related to access to protection at the U.S.-Mexico border and asylum processing at ports of entry. I hold a bachelor's in International Relations from Connecticut College and a master's in public policy from the University of California ("UC"), San Diego.

3. From October 2018 to July 2021, I collaborated on an initiative as the Central America & Mexico Policy Initiative Fellow at the Strauss Center for International Security and Law at the University of Texas at Austin and as a Graduate Student Researcher and Border and Migration Fellow at UC San Diego Center for U.S.-Mexican Studies to document U.S. Customs and Border Protection's ("CBP's") metering practices and the conditions faced by people seeking protection waiting in Mexican border cities to be inspected and processed by CBP officials. In these roles, I made regular visits to the U.S.-Mexico border and conducted phone and in-person  interviews with people seeking protection,

migrant shelter staff, representatives of international and nongovernmental organizations, and Mexican federal and local government officials in eleven Mexican border cities.[1]

4. I have also helped 251 people seek humanitarian exemptions from an order issued by the Centers for Disease Control and Prevention ("CDC's") under Title 42 of U.S. Code, obtain COVID-19 tests, and be successfully processed at four ports of entry[2] since April 1, 2021.

5. For these reasons, I am deeply familiar with conditions at the U.S.-Mexico border and CBP's ability to safely process people seeking asylum at ports of entry.

### The Devastating Toll of Title 42

6. Title 42 endangers the lives and safety of individuals seeking asylum, by leaving them waiting in squalid conditions in the Mexican border cities for many months.

7. In Piedras Negras, for example, the municipal government has prevented migrant shelters from reopening at even a limited capacity due to COVID-19. As a result, many have been forced to sleep in abandoned houses, in the bus terminal, under bridges or on the street, leaving them more vulnerable to the extreme elements and abuse from exploitative actors. In these conditions, families with young children have struggled to access the most basic necessities, such as food and water, and suffered from inadequate sanitary conditions.

8. In addition, there are hundreds of families living in tent camps in Tijuana and Reynosa, where they vulnerable to criminal elements and lack access to services.

9. The inability to request asylum at a port of entry forces migrants, including women, to wait in conditions where they are vulnerable to harm and unable to access basic medical care. Several women I interviewed have recounted being sexually assaulted or otherwise harmed while sleeping on the street in Mexican border cities.

10. I have supported thirteen pregnant women in seeking exemptions from Title 42, most of whom struggled to access basic medical or prenatal care in Mexico and the limited humanitarian assistance in Mexican border cities such as Piedras Negras and Ciudad Acuña. One woman experienced bleeding and became worried that her pregnancy was

---

[1] Those cities are: Matamoros, Tamaulipas; Reynosa, Tamaulipas; Nuevo Laredo, Tamaulipas; Piedras Negras, Coahuila; Ciudad Acuña, Coahuila; Ciudad Juárez, Chihuahua; Agua Prieta, Sonora; Nogales, Sonora; San Luis Rio Colorado, Sonora; Mexicali, Baja California; Tijuana, Baja California. I have also conducted interviews in Monterrey, Nuevo León.
[2] Those four ports of entry are: San Ysidro, Eagle Pass, Del Rio, and Hidalgo.

high risk, while another who was able to visit a health clinic was told that she was at risk of a miscarriage. Others expressed deep concern that the insecurity and extremely unstable living conditions would negatively affect the health of their babies.

11. Title 42 expulsions have also endangered asylum seekers with medical conditions, including families with U.S. citizen children. I sought an exemption for a lesbian couple from El Salvador who were expelled to Piedras Negras days after one of the mothers gave birth to a U.S. citizen baby, while she was still recovering from a cesarean delivery. The U.S. citizen baby was severely sick for several weeks, and the couple struggled to access affordable medical care in Mexico. The couple approached the port of entry and showed the documentation for their U.S. citizen newborn, but they were prevented from entering the bridge by Mexican authorities who told them they needed a visa.

12. While waiting in Mexican border cities, numerous people seeking asylum who I have spoken to in the last few months have reported being extorted, robbed, physically assaulted, and threatened by authorities and other individuals, leaving them fearful for their lives.

13. Individuals seeking protection in Mexican border cities face a high risk of being kidnapped, and this risk is particularly heightened in the state of Tamaulipas, due to the presence of the Gulf Cartel and Cartel del Noreste. Kidnappings of migrants in Mexico that have occurred since February 2021 have been documented through public testimonies, interviews, and an electronic survey by Human Rights First.[3] Approximately one out of every five individuals I interviewed through the exemption process affirmatively reported that they had been kidnapped (32 people), suffered a kidnapping attempt (20 people), or received threats of kidnapping (2 people) in Mexico. This figure is likely a significant undercount because I did not directly solicit information about kidnapping from individuals and many people may have been afraid to report such experiences.

14. Kidnappings of migrants often occur at bus stations, outside migrant shelters, or outside an international bridge or near the port of entry.

15. Title 42 expulsions, especially expulsions to Nuevo Laredo and Reynosa, Tamaulipas, force individuals seeking protection into a situation where they can be easily targeted. After migrants and individuals seeking protection are identified on the street, they are

---

[3] Human Rights First, *Tracker of Reported Attacks During the Biden Administration Against Asylum Seekers and Migrants Who Are Stranded in and/or Expelled to Mexico* (June 2021), https://www.humanrightsfirst.org/sites/default/files/AttacksonAsylumSeekersStrandedinMexicoDuringBidenAdministration.6.17.21.pdf.

generally forced into vans by armed men and driven to a safe house where they are asked for contacts of people will pay ransom, or their phones are searched for U.S. numbers. Those contacts, who are usually family members in the U.S., receive a call demanding thousands of dollars and threatening to harm those in captivity. While being held in the safe house, women are often raped by their captors.

16. One Honduran woman I spoke with in April 2021 was expelled with her young daughter by CBP officials at night through the Hidalgo Port of Entry. After she exited the international bridge into Reynosa, several armed men grabbed her and covered her face with a black hat and forced her in a car. While being held, she was raped multiple times and she begged her captors not to harm her daughter. Her daughter was released by herself and crossed the border unaccompanied. After a month, the woman was able to escape with other women who were being held. She did not know where her daughter was until she was finally contacted by a U.S. shelter.

### Restoring Access to Asylum at Ports of Entry

17. Instead of forcing families to cross dangerous terrain in between ports of entry to seek protection, CBP should restore access to asylum at ports of entry.

18. Throughout the exemption process, I have worked with many families who approached ports of entry for an opportunity to present their asylum claims but they were blocked from entering the port. For example, two weeks ago, a single mother with a U.S. citizen child who has special needs approached the Eagle Pass Port of Entry but was prevented from entering.

19. Although Defendants assert that thousands of people have been processed via ports of entry for exemptions from Title 42 (over a period of several months), Shahoulian Decl. (ECF No. 113-1) ¶ 11, those exemption processes cannot meet the needs of the majority of individuals seeking protection at the border and shift burdens onto nongovernmental organizations ("NGOs") to gather information from vulnerable asylum seekers, including under dangerous conditions in Mexico.

20. Many asylum seekers do not have access to NGOs, and, due to the very limited number of exemptions granted each day, the majority of asylum seekers will not be able to obtain an exemption from Title 42, no matter how vulnerable they are.

I declare under the penalty of perjury under the laws of the United States of America and the State of New York that the foregoing is true and correct. Executed in New York, New York.

Dated: August 10, 2021

_____
Savitri Arvey