# DECLARATION OF LINDA RIVAS

I, Linda Rivas, pursuant to 28 U.S.C. § 1746, declare as follows:

**Summary**

1. Through my work as an immigration attorney and Executive Director of a non-profit I have seen the grave harm caused to families and individuals expelled under Title 42. Families experience extortion, kidnapping, rape, and other violence after being expelled. Despite those harms, the government has failed to utilize the El Paso shelter system, complete with COVID-19 protocols, and instead continues to expel families directly into harms way. Asylum seekers should be processed into the United States, and we have the capacity to receive them, consistent with public health protocols.

**Qualifications**

2. I am the Executive Director of the Las Americas Immigrant Advocacy Center ("Las Americas") in El Paso, Texas.

3. Las Americas is a 501(c)(3) nonprofit organization based in El Paso, Texas providing free and low-cost legal services to immigrants and refugees in West Texas and New Mexico. We have served over 40,000 people from over 77 countries since 1987. We provide legal representation through attorneys and Department of Justice accredited representatives.

4. This year alone, Las Americas has assisted over 1,000 people, including families, seeking asylum that have been impacted by Title 42 processing.

5. I make this declaration based on my personal experience at Las Americas working with noncitizen children and families subject to the Title 42 process since the process began in March 2020.

6. I have been the Executive Director of Las Americas since 2016. I began working at Las Americas as a managing attorney in 2014. I continue, as Executive Director, to directly represent many of our clients. Prior to joining Las Americas, I was the West Texas Violence Against Women's Act supervisor at the Texas Civil Rights Project for almost two years. I graduated law school 2011 from Loyola College of Law and have been a member of the Texas bar since 2013.

**Harm from Title 42**

7. When the Title 42 process first began in March 2020, we started receiving desperate phone calls from families and individual impacted by the expulsions. At the time, given the complete denial of access to the asylum system, we did not have any viable option to assist those families or individuals given the absolute denial of access to asylum under the Title 42 process. Despite no meaningful avenue to advocate for those impacted, we

continued to put together robust humanitarian parole packets for people forced to remain in Mexico in an attempt to get particularly vulnerable families and individuals processed into the United States. Only one was granted after the New York Times reported on the case. The rest were denied.

8. Beginning in February 2021, the Las Americas staff and I started going into Ciudad Juarez to interview people expelled under the Title 42 process. What I heard and saw was shocking. I have witnessed many expulsions occur on the international bridges. I have seen families with very small children, people in wheelchairs, and people on crutches being expelled across the bridges back into Mexico. For many, their vulnerabilities are visible even at a distance.

9. Also, around February 2021, shelters in Ciudad Juarez, Mexico began asking us to come to provide guidance to desperate families and individual stuck in Mexico. We were asked to visit and explain to those asylum seekers why they were not allowed to access the asylum system in the U.S., despite the change in administration.

10. Through these interviews and presentations, I was horrified to hear stories of people expelled without being told by CBP that they were being expelled. Families flown laterally by DHS from one part of the border region to another before being expelled were falsely told by Border Patrol agents that they were being taken to see a judge. Others were told by Border Patrol that they were heading to shelters in the U.S. where they would be able to talk to a lawyer. But these families were misled, and ultimately expelled under Title 42, not knowing they were being forced to Mexico.

11. One case I recall vividly was that of a former police officer from El Salvador, who traveled with his wife and three children. Several of my clients that were former police officers from El Salvador have been granted asylum. I believed this man presented a strong case for asylum. When he crossed the border, he had expressed fear of return to El Salvador and pleaded with the Border Patrol agents that apprehended him to listen to his story. One agent initially said he would listen, but other agents told him to shut up. He was not allowed to express his fear and was expelled to Ciudad Juarez with his family.

12. On Monday, March 29, 2021, at 4:00 PM, I joined a meeting that included CBP Commissioner Miller, where the group in attendance was informed by local CBP leadership that, as part of the Title 42 process, officers were supposed to screen for claims under the Convention against Torture ("CAT"). Under the Title 42 process, CAT screenings, which carry a higher standard than regular asylum assessments, are supposed to occur but rarely do in practice.

13. After that, I made sure to ask expelled families and individuals in Ciudad Juarez if they had any chance to raise their fear claims. Dozens of families and individuals consistently reported to me that they were not allowed to speak while in Border Patrol custody and that there was no opportunity to raise their fear claims.

14. In February 2021, I also conducted interviews and presented to groups of Haitians expelled back to Mexico under the Title 42 process. CBP dumped whole families on the street in Mexico, with children expelled without their shoes. All of the families I spoke with claimed political persecution based on the situation in Haiti. They were all shocked that there was no ability to access asylum in the United States.

15. Asylum seekers subjected to the lateral flights prior to expulsion also reported having to urinate on themselves during the long process. They reported asking to use the restroom, for basic food and milk for children, and those requests being denied by Border Patrol agents and other officials. One man reported only receiving one small carton of milk during the long processes and flight, despite his pleas for more food for his small child. Families reported the process taking some 16 hours.

16. In one case received by our organization, a mother and her 5-year-old daughter were expelled to Mexico from the United States after fleeing sexual assault and domestic violence in Guatemala. After being expelled to Ciudad Juarez this mother was raped. The family also faced ongoing extortion and death threats from smugglers in Mexico following their expulsion.

**Processing at El Paso, Texas**

17. In April 2021, Las Americas started referring clients for exemption to Title 42, first under the *Huisha* referrals process, and later as a primary referrer to the NGO consortium exemption process. We have provided over 900 referrals to the NGO consortium process. For those families and individuals, we conduct an initial consultation with fill out the required questions for submission to Customs and Border Protection.

18. The El Paso community has always stepped up and put together extensive capacity to provide shelter in the El Paso and southern New Mexico area. Shelter capacity in the region has never been fully taken advantage of by the government.

19. The El Paso shelter system is currently receiving only around 50 people a day through the NGO consortium exemption process and around another 10 per week processed out from the Migrant Protection Protocols. Meanwhile, the local shelter system has hundreds of beds available each day. There are ample, under-utilized local resources and willingness from the local community to receive released asylum seekers in line with public health measures.

20. Despite our readiness and willingness, which we clearly communicate to the government, the government had continuously failed to fully utilize those resources.

21. The government is capable of managing its own processing at ports of entry and the there is ample capacity in the El Paso and southern New Mexico region to receive asylum seekers.

22. In my opinion, the Title 42 process should be ended immediately. Asylum seekers should be processed into the United States and we have the capacity to receive them, consistent with public health protocols.

I declare under penalty of perjury under the laws of the United States and Texas that the foregoing is true and correct.

Executed on: August 10, 2021, in El Paso, Texas, United States.

Signature: _____

Linda Rivas