# DECLARATION OF ASTRID DOMINGUEZ

I, Marie Astrid Dominguez, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I make this declaration based on my personal experience working with noncitizen children and families subject to the Title 42 Process. This declaration addresses processing capacity at the Brownsville and Hidalgo Ports of Entry. In my opinion, both ports have the capacity to process more migrants and asylum seekers than they are currently using. In addition, nongovernmental organizations on the U.S. side of the border in the Brownsville and Hidalgo areas have built up capacity to test migrants for COVID-19 and quarantine them.

2. The migrants I work with have also been subjected to great harm due to their expulsions. For example, I am aware of one case involving a father with a 9-year-old daughter with a spine injury; the father carried his visibly disabled daughter across the border but were nevertheless expelled. Numerous women have reported they were violated and assaulted after U.S. border agents expelled them back to Mexico.

3. From late 2020, I have been working closely with the Rio Grande Valley (RGV) Welcoming Committee/Comité de Bienvenida and now facilitate their meetings as a consultant. We are several dozen lawyers and advocates dedicated to welcoming migrants with dignity and assisting government entities with reopening the U.S.–Mexico border to regular asylum and other processing of noncitizens seeking protection, safety, and family reunification.

4. I have been a border advocate since 2012, when I began work with the ACLU of Texas that lasted until May 2021. I have personally been involved in submitting Title 42 exemption requests for more than one hundred individuals and families. I interview migrants and assemble the required information to be submitted to the U.S. government. I have also participated in frequent meetings with a variety of U.S. government officials responsible for both border operations and border policy, including at the Brownsville and Hidalgo ports of entry.

**Processing Capacity at the Brownsville and Hidalgo Ports of Entry**

5. My work focuses primarily on noncitizens coming through two ports of entry, which are respectively located in Brownsville and Hidalgo, Texas, opposite the Mexican cities of Matamoros and Reynosa, Tamaulipas. I am very familiar with operations and capacity in those ports via my work in helping asylum seekers obtain exemptions under Title 42, as well as working with local NGOs and advocates.

6. Until recently, there were two main processes for obtaining Title 42 exemptions. The first process is managed by a consortium of nongovernmental organizations. The second process involved cases submitted directly by lawyers and advocates to the ACLU, which then submitted them to the U.S. government.

7. Noncitizens seeking to come through the Brownsville port of entry as Title 42 exemptions are tested for COVID-19 at the Resource Center Matamoros, a nonprofit

collaborative providing various support services.  This testing typically occurs 72 hours in advance of when the noncitizen is scheduled to cross.  The U.S. government requires the noncitizen to test negative in order cross via the port.  If the test is positive, they are not permitted to cross until a negative result.

8. Migrants crossing through the Hidalgo, TX port of entry as Title 42 exemptions are tested for COVID-19 at Senda de Vida, a nongovernmental overnight shelter.  Again, the testing occurs 72 hours in advance of when the noncitizen is expected to present at the port, and the U.S. government does not permit them to cross unless they show a negative result.

9. In my opinion, neither the Brownsville nor the Hidalgo port is operating at capacity. This conclusion is partly because the ports are designed to process large numbers of people coming to the United States for other reasons, e.g. tourism or leisure, but such noncitizens cannot currently enter the United States because of so-called "essential travel" bans.

10. The federal government could also explore ways to minimize time spent at ports by people who have not provided advance information before coming to the port.  For example, not all immigration-processing functions may need to take place at a port of entry. After verifying the noncitizen's identity and checking that the person presents no criminal, safety, or security concerns, the noncitizen could quickly be sent to a secondary processing center where, for example, they could be issued any necessary paperwork related to their immigration cases.

**Processing Capacity on the U.S. Side**

11. Noncitizens who cross between ports of entry near Brownsville and Hidalgo and encounter Border Patrol agents are processed by CBP and, if they are permitted to remain instead of being expelled or detained, are released to local nongovernmental organizations that provide universal testing for COVID-19 and social services.

12. For example, noncitizens who enter near the Hidalgo area are typically sent to McAllen, Texas, where Catholic Charities of the Rio Grande Valley runs the Humanitarian Respite Center (HRC).  The HRC receives them and conducts universal COVID-19 testing with DHS support. In Brownsville, CBP transports noncitizens to a receiving area at the Brownsville bus station, where the City of Brownsville provides support and DHS has been involved in ensuring testing for COVID-19.

13. Nonprofits, in conjunction with local governments, have developed infrastructure to receive, test, and quarantine migrants. For example, the City of McAllen has raised an emergency shelter that can house approximately 650 noncitizens who have tested positive for COVID-19. Other organizations, including Catholic religious organizations, have contracted with 10 hotels "in a 40-mile radius from the South Texas towns of Weslaco to La Joya and Edinburg and Mission" for quarantine rooms that can accommodate at least 1,000 people. In Brownsville, the City offers noncitizens who test positive an accommodation for a person's quarantine period with financial support available.  There is also quarantine capacity at a local overnight shelter called the Ozanam Center.

14. I am aware that Catholic Charities of the Rio Grande Valley has reported near-universal compliance with quarantine requirements by migrants who test positive at the HRC. Positive tests at the Brownsville bus station have also been followed by quarantine. My understanding is that noncitizens released in both Brownsville and Hidalgo are offered COVID-19 vaccines.

**Noncitizens Subjected to Title 42 Face Grave Danger**

15. My work with the Title 42 exemption process has exposed me to the trauma of hundreds of migrants denied an opportunity to present asylum claims to protection in the United States. The migrants I work with report that they have been expelled to unsafe conditions in Mexico that include homelessness, violence from organized crime, and medical jeopardy. Many have detailed stories and documentary evidence of harm in their home countries. Others are so traumatized that eliciting their hardship is challenging and psychologically delicate.

16. I am aware of many cases where women in advanced pregnancy have been expelled, as well as noncitizens with significant mental and physical disabilities, such as children with special needs and noncitizens with visual disabilities. Our Welcoming Committee was involved in the case of D., a 9-year-old girl with a spine injury whose father carried her to the U.S –Mexico border from Honduras. Yet they were expelled by Border Patrol despite pleading for consideration of D.'s medical condition.

17. Expulsions are taking place to Reynosa and other Mexican cities that are known, and reported by the State Department, to be centers of violent crime against migrants. In particular, sexual violence against female migrants is widespread, even when they are kidnapped with their children. U.S. government expulsions are sending women and children into the hands of rapists. I have talked with many women who were violated repeatedly and brutally by kidnappers after U.S. government officers refused to assess their protection claims. Sometimes these kidnappings happen within hours of expulsion.

18. Despite rampant kidnapping, which often includes deprivation of food and torture, families with young children continue to be expelled to Reynosa. There are no state-provided services for them and the population living unhoused in city plazas now exceeds 4,000 people who are often targeted by organized crime. Family separations also occur when parts of a family are allowed to stay in the U.S. but others are expelled. I have come across parental separations where one parent and a very young child were allowed to stay by Border Patrol while the second parent with an older child was expelled.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on: August 11, 2021, in Toronto, Ontario, Canada.

Signature: _____
Marie Astrid Dominguez