## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NANCY GIMENA HUISHA-HUISHA, on behalf of herself and others similarly situated, *et al.*,<br><br>    Plaintiffs,<br><br>      *v.*<br><br>ALEJANDRO MAYORKAS, Secretary of Homeland Security, *et al.*,<br><br>    Defendants. | Civ. A. No. 21-100 (EGS) |

## MOTION TO INTERVENE BY THE STATES OF ARIZONA, LOUISIANA, ALABAMA, ALASKA, KANSAS, KENTUCKY, MISSISSIPPI, NEBRASKA, OHIO, OKLAHOMA, SOUTH CAROLINA, TEXAS, VIRGINIA, WEST VIRGINIA, AND WYOMING

Pursuant to Federal Rule of Civil Procedure 24, the States of Arizona, Louisiana, Alabama, Alaska, Kansas, Kentucky, Mississippi, Nebraska, Ohio, Oklahoma, South Carolina, Texas, Virginia, West Virginia, and Wyoming hereby respectfully move to intervene in this action, both as of right and permissively.

In support of this Motion, the States submits the accompanying Memorandum of Law and [Proposed] Order.

1

Dated:  November 21, 2022

Respectfully submitted,

**JEFF LANDRY**
Attorney General of Louisiana

/s/ Elizabeth B. Murrill
ELIZABETH B. MURRILL (La #20685)
Solicitor General
J. SCOTT ST. JOHN (La #36682)
Deputy Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

*Attorneys for the State of Louisiana*

**STEVE MARSHALL**
Attorney General of Alabama

/s/ Edmund G. LaCour Jr.
EDMUND G. LACOUR JR.
Solicitor General
State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Attorneys for the State of Alabama*

**MARK BRNOVICH**
Attorney General of Arizona

/s/ Drew C. Ensign
DREW C. ENSIGN
Deputy Solicitor General
Arizona Attorney General's Office
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-5200
Drew.Ensign@azag.gov

*Attorneys for the State of Arizona*

**TREG R. TAYLOR**
Attorney General of Alaska
CORI M. MILLS
Deputy Attorney General of Alaska

/s/ Christopher A. Robinson
CHRISTOPHER A. ROBINSON
Alaska Bar No. 2111126
Assistant Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501-1994
chris.robison@alaska.gov

*Attorneys for the State of Alaska*

**DEREK SCHMIDT**
Attorney General of Kansas

/s/ Brant M. Laue
BRANT M. LAUE*
Solicitor General
OFFICE OF KANSAS ATTORNEY
GENERAL
120 SW 10th Avenue, 3rd Floor
Topeka, KS 66612-1597
(785) 368-8435 Phone
Brant.Laue@ag.ks.gov

*Attorneys for the State of Kansas*

**DANIEL CAMERON**
Attorney General of Kentucky

/s/ Marc Manley
MARC MANLEY*
Associate Attorney General
KENTUCKY OFFICE OF THE
ATTORNEY GENERAL
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5478

*Attorneys for the Commonwealth of Kentucky*

**LYNN FITCH**
Attorney General of Mississippi

/s/ Justin L. Matheny
JUSTIN L. MATHENY
Deputy Solicitor General
OFFICE OF THE MISSISSIPPI
ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205-0220
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Attorneys for the State of Mississippi*

**DOUGLAS J. PETERSON**
Attorney General of Nebraska

/s/ James A. Campbell
JAMES A. CAMPBELL*
Solicitor General
OFFICE OF THE NEBRASKA
ATTORNEY GENERAL
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2682
jim.campbell@nebraska.gov

*Attorneys for the State of Nebraska*

**DAVE YOST**
Attorney General of Ohio

/s/ Ben Flowers
BEN FLOWERS
 Solicitor General
Office of Ohio Attorney General Dave Yost
Office number: (614) 728-7511
Cell phone:      (614) 736-4938
benjamin.flowers@ohioattorneygeneral.gov

*Attorneys for the State of Ohio*

**JOHN M. O'CONNOR**
Attorney General of Oklahoma

/s/ Bryan Cleveland
BRYAN CLEVELAND*
Deputy Solicitor General
OKLAHOMA ATTORNEY GENERAL'S
OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921

*Attorneys for the State of Oklahoma*

**ALAN WILSON**
Attorney General of South Carolina

/s/ James Emory Smith, Jr.
JAMES EMORY SMITH, JR.
Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
(803) 734-3642
esmith@scag.gov

*Attorneys for the State of South Carolina*

**KEN PAXTON**
Attorney General of Texas

/s/ Aaron F. Reitz
AARON F. REITZ*
Deputy Attorney General for Legal Strategy
LEIF A. OLSON*
Special Counsel
OFFICE OF THE ATTORNEY GENERAL
OF TEXAS
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1700
Aaron.Reitz@oag.texas.gov
Leif.Olson@oag.texas.gov

*Attorneys for the State of Texas*

**JASON S. MIYARES**
Attorney General of Virginia

/s/ Andrew N. Ferguson
ANDREW N. FERGUSON
Solicitor General
LUCAS W.E. CROSLOW
Deputy Solicitor General
OFFICE OF THE VIRGINIA ATTORNEY
GENERAL
202 North 9th Street
Richmond, Virginia 23219
(804) 786-7704
AFerguson@oag.state.va.us

*Attorneys for the Commonwealth of Virginia*

**PATRICK MORRISEY**
Attorney General of West Virginia

LINDSAY SEE*
Solicitor General
MICHAEL R. WILLIAMS
Deputy Solicitor General
OFFICE OF THE WEST VIRGINIA
ATTORNEY
GENERAL
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(681) 313-4550
Lindsay.S.See@wvago.gov

*Attorneys for the State of West Virginia*

**BRIDGET HILL**
Attorney General of Wyoming

/s/ Ryan Schelhaas
RYAN SCHELHAAS*
Chief Deputy Attorney General
OFFICE OF THE WYOMING ATTORNEY
GENERAL
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-5786
ryan.schelhaas@wyo.gov

*Attorneys for the State of Wyoming*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

MOTION AND INTRODUCTION ............................................................................................ 1

BACKGROUND ......................................................................................................................... 2

LEGAL STANDARD ................................................................................................................. 8

ARGUMENT .............................................................................................................................. 8

    I.    This Court Should Grant the States Intervention as of Right. ..................................... 8

        A.    The States' Motion to Intervene Is Timely. ..................................................... 9

        B.    The States Have Significant Protectable Interests in the Subject of this Action That Will Be Impaired Absent Intervention. ..................................... 10

        C.    The States' Interests Are Not Adequately Represented. ............................... 15

    II.    Permissive Intervention Is Warranted. ....................................................................... 17

CONCLUSION ........................................................................................................................ 18

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Arizona v. United States*,
   567 U.S. 387 (2012) ............................................................................................ 14

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
   142 S. Ct. 1002 (2022) ........................................................................................ 9

*Conservation Law Found. of New England, Inc. v. Mosbacher*,
   966 F.2d 39 (1st Cir. 1992) ................................................................................ 15

*Del. Dep't of Nat. Res. v. EPA*,
   785 F.3d 1 (D.C. Cir. 2015) ............................................................................... 12

*Dimond v. District of Columbia*,
   792 F.2d 179 (D.C. Cir. 1986) ........................................................................... 10

*EEOC v. Nat'l Children's Ctr., Inc.*,
   146 F.3d 1042 (D.C. Cir. 1998) .................................................................... 16, 17

*Huisha-Huisha v. Mayorkas*,
   27 F.4th 718 (D.C. Cir. 2022) ............................................................................. 4

*In re Brewer*,
   863 F.3d 861 (D.C. Cir. 2017) ............................................................................. 8

*Louisiana v. Centers for Disease Control & Prevention*,
   2022 WL 1604901 (W.D. La. May 20, 2022) ................................................. 6, 13

*Louisiana v. Centers for Disease Control*,
   No. 6:22-885 (W.D. La.) ...................................................................................... 5

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ............................................................................................ 14

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994) ............................................................................. 10

*Smoke v. Norton*,
   252 F.3d 468 (D.C. Cir. 2001) ....................................................................... 9, 15

*State of Alaska v. FERC*,
   980 F.2d 761 (D.C. Cir. 1992) ............................................................................. 7

*State of Louisiana v. Centers for Disease Control*,
   No. 22-30303 (5th Cir.) ....................................................................................... 6

*Texas v. Biden*,
   589 F. Supp. 3d 595 (N.D. Tex. 2022) ....................................................5, 10, 13, 14

*Texas v. United States*,
   50 F. 4th 498 (5th Cir. 2022) ...............................................................................14

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) ...............................................................................14

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) .............................................................................................15

*United Airlines, Inc. v. McDonald*,
   432 U.S. 385 (1977) .........................................................................................9, 10

*United States House of Representatives v. Price*,
   No. 16-5202, 2017 WL 3271445 (D.C. Cir. Aug. 1, 2017) .......................9, 10, 15, 16

*United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*,
   45 F.4th 426 (D.C. Cir. 2022) .........................................................................15, 16

*United States v. Philip Morris USA Inc.*,
   566 F.3d 1095 (D.C. Cir. 2009) ...........................................................................15

*United States v. Texas*,
   579 U.S. 547 (2016) .............................................................................................14

*Utah Ass'n of Cntys. v. Clinton*,
   255 F.3d 1246 (10th Cir. 2001) ...........................................................................15

**RULES**

42 C.F.R. 71.40 ...........................................................................................................15

Fed. R. Civ. P. 24 ..........................................................................................................8

**REGULATIONS**

85 Fed. Reb. 17,060 (Mar. 26, 2020) ...........................................................................3

85 Fed. Reg. 12,855 (Mar. 4, 2020) .............................................................................2

85 Fed. Reg. 15,045 (Mar. 16, 2020) ...........................................................................2

85 Fed. Reg. 15,337 (Mar. 18, 2020) ...........................................................................2

85 Fed. Reg. 16,547 (Mar. 24, 2020) ...........................................................................3

85 Fed. Reg. 16,559 (Mar. 24, 2020) ...........................................................................3

85 Fed. Reg. 22,424 (Apr. 22, 2020) ............................................................................3

85 Fed. Reg. 31,503 (May 26, 2020) ........................................................................3

85 Fed. Reg. 56,524 (Sept.11, 2020) ...................................................................4, 15

85 Fed. Reg. 65,806 (Oct. 16, 2020) .......................................................................4

85 Fed. Reg. 6709 (Feb. 5, 2020) ...........................................................................2

86 Fed. Reg. 38,717 (July 22, 2021) ........................................................................4

86 Fed. Reg. 42,828 (Aug. 5, 2021) ..................................................................4, 5, 12

86 Fed. Reg. 8,267 (Feb. 5, 2021) ...........................................................................5

86 Fed. Reg. 9,942 (Feb. 17, 2021) ..........................................................................5

87 Fed. Reg. 15,243 (Mar. 17, 2022) ........................................................................4

# INDEX OF EXHIBITS

| Description | Exhibit |
|---|---|
| Copy of preliminary injunction briefing filed in *Texas v. Biden*, No. 4:21-cv-579 (N.D. Tex.) | 1 |
| Appendix to Texas's Renewed Motion for Preliminary Injunction filed in *Texas v. Biden*, No. 4:21-cv-579 (N.D. Tex.) | 2 |
| Plaintiff States' Motion for Preliminary Injunction and to Expedite, a supporting brief, and supporting evidence filed in *Louisiana v. Centers for Disease Control*, No. 6:22-cv-885 (W.D. La.). | 3 |
| Preliminary Injunction entered in *Louisiana v. Centers for Disease Control*, No. 6:22-cv-885 (W.D. La.) | 4 |
| Order by the U.S. Court of Appeals for the Fifth Circuit in *Louisiana v. Centers for Disease Control*, No. 6:22-cv-885 (W.D. La.) | 5 |
| Defendants' Notice of Decision Vacating Title 42 Orders filed in *Louisiana v. Centers for Disease Control*, No. 6:22-cv-885 (W.D. La.) | 6 |
| Letter filed in *Louisiana v. CDC et al*, No. 22-30303 (5th Cir.) by the federal government | 7 |
| Transcript of the videotaped deposition of Raul L. Ortiz, as obtained from the State of Florida | 8 |
| Document obtained from the State of Florida – Memorandum from Raul L. Ortiz | 9 |
| Supplemental Declaration of Stephen W. Manning filed in *East Bay Sanctuary Covenant v. Barr*, No. 4:19-cv-4073 (N.D. Cal.) | 10 |

v

## INTRODUCTION

The States of Arizona, Louisiana, Alabama, Alaska, Kansas, Kentucky, Mississippi, Nebraska, Ohio, Oklahoma, South Carolina, Texas, Virginia, West Virginia, and Wyoming (collectively, "the States"), hereby move pursuant to Federal Rule of Civil Procedure 24 to intervene in this action, both as of right and permissively.[1] The States successfully obtained a preliminary injunction against Defendants' attempts to rescind their Title 42 Orders. This Court entered an order with that same effect last week, Dkt. 165, and the Federal Defendants have made clear that they will not seek to stay that order beyond the few weeks they need to comply in an orderly fashion. Thus, despite defending this lawsuit since January of 2021, the Federal Defendants have shifted course and abandoned their defense of Title 42. In essence, Federal Defendants have circumvented APA notice-and-comment requirements by abandoning defense of Title 42 and instead agreeing with Plaintiffs on a December 21 end date.

Because invalidation of the Title 42 Orders will directly harm the States, they now seek to intervene to offer a defense of the Title 42 policy so that its validity can be resolved on the merits, rather than through strategic surrender. This motion is plainly timely because it comes within a week of the Federal Defendants' volte-face—which made plain that the States' interests are no longer adequately represented.

Plaintiffs and Defendants oppose this motion.

---

[1]  Additional States contemplate joining this motion via a follow-on filing.

## BACKGROUND

### THE TITLE 42 ORDERS

COVID-19 is an infectious disease first detected in China in late-2019. It quickly spread into a global pandemic. The Secretary of the United States Department of Health and Human Services accordingly declared a public health emergency on January 31, 2020, under section 319 of the Public Health Service Act (42 U.S.C. 247(d)). That same day, the President sought to limit the spread of the spread of COVID-19 by suspending "[t]he entry into the United States, as immigrants or nonimmigrants, of all aliens who were physically present within the People's Republic of China … during the 14-day period preceding their entry or attempted entry into the United States." *Proclamation 9984, Suspension of Entry*, 85 Fed. Reg. 6709, 6710 (Feb. 5, 2020). The President then issued similar suspensions of entry from the Republic of Iran, *Proclamation 9992, Suspension of Entry*, 85 Fed. Reg. 12,855 (Mar. 4, 2020), and the Schengen Area of Europe, *Proclamation* 9993*, Suspension of Entry*, 85 Fed. Reg. 15,045 (Mar. 16, 2020).

In suspending entry from these areas, the President explained "the potential for widespread transmission of [the virus that causes COVID-19] by infected individuals seeking to enter the United States threatens the security of our transportation system and infrastructure and the national security." 85 Fed. Reg. at 12,855-56. He further explained that "the [Centers for Disease Control and Prevention], along with State and local health departments, has limited resources, and the public health system could be overwhelmed if sustained human-to-human transmission of the virus occurred in the United States" on a large scale. *Id.* "Sustained human-to-human transmission has the potential to have cascading public health, economic, national security, and societal consequences." *Id.*; *see also* 85 Fed. Reg. at 15,045. As COVID continued to spread, the President declared a national emergency. *Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337 (Mar. 18, 2020).

Consistent with the threat posed by COVID-19, federal agencies issued numerous additional travel restrictions, including restrictions on "non-essential travel between the United States and Mexico" because it "pose[d] a specific threat to human life or national interests." *Notification of Temporary Travel Restrictions*, 85 Fed. Reg. 16,547 (Mar. 24, 2020). Land crossings, for example, placed "the personnel staffing land ports of entry … as well as the individuals traveling through these ports of entry to increased risk of exposure to COVID-19." *Id.* at 16,547.

CDC acted, too. Pursuant to section 362 of the Public Health Service Act, 42 U.S.C § 265, CDC issued an Interim Final Rule providing that it may prohibit the "introduction into the United States of persons" from foreign countries. *Control of Communicable Diseases*, 85 Fed. Reg. 16,559, 16,563 (Mar. 24, 2020) (effective date Mar. 20, 2020). CDC then issued an order under Title 42 directing the "immediate suspension of the introduction" of certain persons, referred to as "covered aliens." *Notice of Order Under Sections 362 and 365 of the Public Health Service Act*, 85 Fed. Reb. 17,060, 17,067 (Mar. 26, 2020) (effective date March 20, 2020). "Covered Aliens" are those seeking to enter the United States through Canada or Mexico who "seek[] to enter . . . [ports of entry] who do not have proper travel documents, aliens whose entry is otherwise contrary to law, and aliens who are apprehended near the border seeking to unlawfully enter the United States between [ports of entry]." *Id.* at 17,060. The March 20 Order was extended on April 20, 2020, *Extension of Order*, 85 Fed. Reg. 22,424 (Apr. 22, 2020) (effective date April 20, 2020), and it was amended to cover both land and costal ports of entry and Border Patrol Stations on May 26, 2020, *Amendment and Extension of Order*, 85 Fed. Reg. 31,503 (May 26, 2020) (effective date May 21, 2020).

After receiving public comments in response to the Interim Final Rule, CDC issued a Final Rule pursuant to 42 U.S.C § 265 "establish[ing] final regulations under which the [CDC] Director may suspend the right to introduce and prohibit, in whole or in part, the introduction of persons into the United States." *Control of Communicable Diseases*, 85 Fed. Reg. 56,524 (Sept.11, 2020). CDC also extended its suspension of the introduction of Covered Aliens. 85 Fed. Reg. 65,806 (Oct. 16, 2020); 86 Fed. Reg. 38,717 (July 22, 2021); 86 Fed. Reg. 42,828 (Aug. 5, 2021); 87 Fed. Reg. 15,243 (Mar. 17, 2022).

### THE HUISHA-HUISHA SUIT

On January 12, 2021, plaintiffs purportedly subject to expulsion under Title 42 filed this suit alleging the Title 42 orders violate various statutory provisions, including the Administrative Procedure Act. Dkt. 1. On September 16, 2021, this Court granted class certification and further granted a preliminary injunction prohibiting Defendants "from applying the Title 42 Process, including the CDC's August 2021 Order, to the Class Members." Dkt. 122 at 2. The basis of that preliminary injunction was this Court's determination that 42 U.S.C. § 265 does not permit expulsion or removal of aliens. Dkt. 123 at 34. Defendants appealed. Dkt. 124.

The D.C. Circuit stayed this Court's preliminary injunction, and it generally rejected this Court's statutory analysis, albeit while affirming a narrow part. *Huisha-Huisha v. Mayorkas*, 27 F.4th 718 (D.C. Cir. 2022). More specifically, the D.C. Circuit held "the Executive may expel the Plaintiffs, but only to places where they will not be persecuted or tortured," then remanded to this Court for further proceedings. Dkt. 136-1.

### TEXAS ENJOINS AN UNEXPLAINED EXCEPTION TO TITLE 42

Yielding to the demands of his base, on February 2, 2021, President Biden ordered that "[t]he Secretary of HHS and the Director of CDC, in consultation with [DHS], shall promptly

review and determine whether termination, rescission, or modification of the [Title 42 orders] is necessary and appropriate." 86 Fed. Reg. 8,267 (Feb. 5, 2021). Citing President Biden's order, CDC created an exception to the Title 42 process for certain aliens. *Notice of Temporary Exception*, 86 Fed. Reg. 9,942 (Feb. 17, 2021). Texas brought suit attacking the essentially unexplained exception as, *inter alia*, arbitrary and capricious such that it violated the APA. *See* Compl. (Dkt. 1), *Texas v.* Biden, No. 4:21-cv-579 (N.D. Tex.). Texas then moved for a preliminary injunction. Ex. 1. The Northern District of Texas first held that Texas had standing. *Texas v. Biden*, 589 F. Supp. 3d 595, 610-13 (N.D. Tex. 2022). The court identified various financial injuries to Texas from increased expenditures traceable to the Title 42 exception. And the court noted CDC "tacitly confirmed" Texas's claim of injury: one of the Title 42 Orders acknowledges "'[s]igns of stress are already present in the southern regions of the United States,'" and "'the flow of migration directly impacts not only border communities and regions, but also destination communities and healthcare resources of both.'" *Id.* at 612 (quoting 86 Fed. Reg. at 42,835). On the merits, the court agreed with Texas, so it preliminarily enjoined the defendants from implementing the exception to the Title 42 process. *Id.* at 623-24.

### TWENTY-FOUR STATES ENJOIN CDC'S ATTEMPT TO TERMINATE TITLE 42

In April 2022—fourteen months after President Biden instructed it to consider doing so—CDC issued an order terminating its previous Title 42 Orders outright. Dkt. 134. A coalition of States then filed suit alleging the Termination Order violated the APA because it was issued without notice and comment and was arbitrary and capricious. Compl. (Dkt. 1), *Louisiana v. Centers for Disease Control*, No. 6:22-885 (W.D. La.). The States noted the Termination Order was "plainly at war with other policies of the Biden Administration," such as refusing to lift the mask mandate on airline travelers, refusing to repeal vaccination mandates, and insisting on

discharging members of the military who sought religious exemptions from those mandates. *Id.* ¶ 13. And CDC utterly failed to consider the consequences of its order on the States, which even Biden Administration officials acknowledged would be an "influx" of aliens, inflicting a "surge on top of a surge" that would irreparably harm the Intervenor States. *Id.* ¶¶ 7, 30-31, 90. Ultimately, 24 States joined in the challenge and moved for a preliminary injunction. Exh. 3.

The Western District of Louisiana granted the States' motion. *Louisiana v. Centers for Disease Control & Prevention,* 2022 WL 1604901, at *23 (W.D. La. May 20, 2022). Like the Northern District of Texas, the court expressly rejected the contention that the States lacked standing do defend Title 42. *Id.* at *10, 15. In addition to the special solicitude due States, the court found "the States have come forward with evidence that the Termination Order is likely to result in a significant increase in border crossings, [and] that this increase will [adversely] impact" the States in a way fairly traceable to the termination of Title 42. *Id.* at *13, 14-15. On the merits, the court held CDC failed to demonstrate "good cause" for failing to engage in notice-and-comment before issuing the Termination Order. *Id.* at *20. And although the court declined to reach whether the Termination Order was arbitrary and capricious, it strongly suggested as much based on appellate precedent. *Id.* at *22. Defendants and activist intervenors appealed to the U.S. Court of Appeals for the Fifth Circuit. That court denied relief from the nationwide scope of the preliminary injunction. Ex. 5. Briefing on the merits is now complete. *See Louisiana v. CDC*, No. 22-30303 (5th Cir.).

### THIS COURT VACATES THE TITLE 42 FINAL RULE AND ASSOCIATED ORDERS

Three months after the Western District of Louisiana entered its preliminary injunction against CDC's Termination Order, the plaintiffs in this case moved for partial summary judgment that "the regulation at 42 C.F.R. § 71.40 and all orders and decision memos issued by [CDC] or

the U.S. Department of Health and Human Services suspending the right to introduce certain persons into the United States—is arbitrary and capricious in violation of the Administrative Procedure Act." Dkt. 144.[2] When Plaintiffs first raised the issue of vacatur in their reply, the Federal Defendants filed a sur-reply emphasizing that "grants of partial summary judgment are generally considered interlocutory orders" and neither party had addressed the question of remedy in their briefing. Dkt. 160 at 1-2 (quoting *State of Alaska v. FERC*, 980 F.2d 761, 764 (D.C. Cir. 1992)). This Court nevertheless entered a judgment on November 15, 2022, giving Plaintiffs everything they asked for. It "vacate[d] and set[] aside the Title 42 policy-consisting of the regulation at 42 C.F.R. § 71.40 and all orders and decision memos issued by [CDC] or the U.S. Department of Health and Human Services suspending the right to introduce certain persons into the United States" as arbitrary and capricious in violation of the APA. Dkt. 164 at 1. The Court then stated "that any request to stay this Order pending appeal will be denied." *Id.* at 2.

## THE FEDERAL DEFENDANTS ABANDON THEIR DEFENSE OF TITLE 42

Within hours of this Court's order, the Federal Defendants filed an Unopposed Emergency Motion for Temporary Stay. Dkt. 166. The Defendants made clear that "[t]he requested temporary stay … is not for the pendency of appeal but rather for only a temporary period." *Id.* ¶ 6. They elaborated:

> DHS requires a short period of time to prepare for the transition from Title 42 to Title 8 processing, given the need to resolve resource and logistical issues that it was unable to address in advance without knowing precisely when currently operative August 2021 Title 42 order would end. Cf. 87 Fed. Reg. at 19,954–56 (setting effective date of Termination Order for 52 days from date of issuance to, among other things, provide DHS with additional time to ready operational plans).

---

[2] An APA claim is almost necessarily based on the public record, and it appears no non-public documents were submitted in support of summary judgment. The summary judgment briefing is nevertheless inexplicably sealed. *See* Dkt. 144-1. This Court ordered Plaintiffs to file a redacted version of that document within five business days of a September 28, 2022, Minute Order, but it appears Plaintiffs failed to comply.

> During this period of time, DHS will need to move additional resources to the border and coordinate with stakeholders, including non-governmental organizations and state and local governments, to help prepare for the transition to Title 8 processing. This transition period is critical to ensuring that DHS can continue to carry out its mission to secure the Nation's borders and to conduct its border operations in an orderly fashion.

*Id.* ¶ 7. This Court granted that request "with great reluctance" and specified that its order will take effect at midnight on December 21, 2022.

The Defendants then informed the Western District of Louisiana that "[o]nce the five-week stay expires … CDC's Title 42 orders will be vacated, and there will thus be no legal authority for the government to continue to enforce the Title 42 policy." Ex. 6. Accordingly, notwithstanding the preliminary injunction, "on December 21, DHS will begin processing all noncitizens entering the United States pursuant to Title 8." *Id.* Defendants made a substantially similar filing with the U.S. Court of Appeals for the Fifth Circuit. Ex. 7.

## LEGAL STANDARD

Intervention is governed by Federal Rule of Civil Procedure 24. "On timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Alternatively, "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1).

## ARGUMENT

### I.   THIS COURT SHOULD GRANT THE STATES INTERVENTION AS OF RIGHT.

To intervene as of right, "prospective intervenors must satisfy the four requirements of Rule 24(a)(2)." *In re Brewer*, 863 F.3d 861, 872 (D.C. Cir. 2017). Those requirements are "(1)

the motion for intervention must be timely; (2) intervenors must have an interest in the subject of

the action; (3) their interest must be impaired or impeded as a practical matter absent intervention;

and (4) the would-be intervenor's interest must not be adequately represented by any other party."

*Id.* The Intervenor States satisfy each of these requirements.

### A.    The States' Motion to Intervene Is Timely.

"[T]imeliness is to be judged in consideration of all the circumstances." *Smoke v. Norton*,

252 F.3d 468, 471 (D.C. Cir. 2001). The Supreme Court recently explained that "the most

important circumstance relating to timeliness" is whether the litigant "sought to intervene as soon

as it became clear that [its] interests would no longer be protected by the parties in the case."

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1012 (2022) (internal quotation

marks omitted). And a post-judgment motion to intervene is timely if it is "filed soon after the

movant learned that [a party purportedly representing the State's interests] would not appeal." *Id.*

(discussing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 396 (1977)); *accord United States

House of Representatives v. Price*, No. 16-5202, 2017 WL 3271445, at *2 (D.C. Cir. Aug. 1, 2017)

("Where, as here, substantial doubts about the inadequacy of representation develop after the case

has begun, timeliness is measured from when the potential inadequacy of representation

develops.").

The D.C. Circuit has allowed intervention when a movant was "prompted by the post-

judgment prospect that the Government might not appeal." *Smoke*, 252 F.3d at 471. The Court

noted that "[p]rior to the entry of judgment . . . [the movant] had no reason to intervene; [its]

interests were fully consonant with those of the Government, and those interests were adequately

represented by the Government's litigation of the case." *Id.* In such circumstances, "a post-

judgment motion to intervene in order to prosecute an appeal is timely (if filed within the time

period for appeal) because 'the potential inadequacy of representation came into existence only at

the appellate stage.'" *Id.* (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986)).

The States' intervention motion here is plainly timely. The Intervenor States made this motion within six days of learning the Federal Defendants would not defend the legality of the Title 42 policy by seeking an appeal. Thus, the Intervenor States have sought to intervene within a "reasonable time from when their doubts about adequate representation arose." *Price*, 2017 WL 3271445, at *2. And the time for appeal has not elapsed. *See* Fed. R. App. Pro. 4(1)(B) (allowing 60 days for an appeal if the United States or one of its agencies is a party).

Moreover, because the States filed this intervention motion quickly after the Federal Defendants indicated their intention not to appeal, there will be no prejudice to the other parties. *See Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (holding that the "requirement of timeliness is … a guard against prejudicing the original parties"); *McDonald*, 432 U.S. at 394. Intervention here ensures this case will be resolved on the merits, rather than through abdication. Denying the parties a potential opportunity to obtain their desired ends through the contrivance of surrender inflicts no cognizable prejudice on Plaintiffs. *See McDonald*, 432 U.S. at 394; *Price*, 2017 WL 3271445, at *2 (noting lack of prejudice because "intervention would not delay resolution of the merits." (internal quotation marks omitted)).

B.    **The States Have Significant Protectable Interests in the Subject of this Action That Will Be Impaired Absent Intervention.**

The States also have a protectable interest in the continuing validity of the Title 42 implementing regulations and the related orders.. Two federal district courts independently held as much by finding the States have standing to oppose termination or restriction of the Title 42 Orders. *See Louisiana*, 2022 WL 1604901, at *10-15; *Texas*, 589 F. Supp. 3d at 610-13. Those holdings were undoubtedly correct.

In a July 28, 2022, deposition, Defendant Border Patrol Chief Raul Ortiz testified that migrant flows are responsive to changes in border operations, including processing time and likelihood of release. Ex. 8 at 62:21-64:9. Chief Ortiz further admitted that "unprecedented numbers of aliens are illegally entering the United States right now," "more aliens are going through the southern border than we have seen in the last 20 years," and "the southern border is currently in crisis." *Id.* at 40:18–41:17. Consistent with Chief Ortiz's testimony and public statements by federal officials, a May 19, 2022, guidance memorandum issued by Chief Ortiz explained the Border Patrol "is preparing for the anticipated increase in encounters of undocumented [aliens] following the anticipated lifting of [CDC's] Title 42 public health order. Ex. 9. The memorandum noted that "for most of Fiscal Year 2022 … USBP facilities [were] at, near, or over capacity." *Id.* Accordingly, Chief Ortiz's memorandum provided guidance for release of aliens into the interior of the United States, and specifically contemplated releases at "transportation hubs (i.e., airports, bus terminals)" as well as the likelihood that "local resources are [so] overtaxed" that "local releases without basic services could endanger the noncitizen" and USBP-provided "non-local transportation of noncitizens … may be necessary and appropriate." *Id.* The Termination Order is in accord. Dkt. 134 at *31 ("CDC recognizes that the Termination of the August Order will lead to an increase in the number of noncitizens being processed in DHS facilities …. Moreover, DHS projects … an increase in encounters in the coming months."). Indeed, CDC delayed implementation of the Termination Order due to its impact on migration and DHS's needing time to prepare for the resulting surge.

Chief Ortiz's testimony, his memorandum, and the Termination Order itself make clear that border states like Arizona and Texas will face increased migrant flows and increasd releases of aliens if the Title 42 process is terminated. Those aliens will flow to other States, too. For

example, Stephen Manning of the immigration activist organization Innovation Law Lab explained
in a 2019 declaration:

> [T]he clients served by Law Lab's programs do not [*sic*] complete their
> immigration case in a single jurisdiction. It is possible that a client would move
> seamlessly between our program sites—and thus between different judicial
> circuits—as their case progresses. A person fleeing persecution might receive a
> legal orientation and services at a workshop supported by Law Lab in Tijuana,
> Mexico; obtain release on bond or parole from a detention center in Texas with
> assistance from our BorderX project; and complete their asylum application at a
> Law Lab-run legal workshop in Atlanta, Georgia. Many persons served by Law
> Lab programs move between jurisdictions throughout the lifetime of their asylum
> case as well. In my experience, such movement between jurisdictions is common
> for asylum seekers.

Ex. 10 ¶ 16. "[A]sylum seekers that Law Lab has provided guidance to in Tijuana [Mexico] …

end up in detention centers in Louisiana and Mississippi, despite the fact that they entered the US

to request asylum in the Ninth Circuit." *Id.* ¶ 12. Accordingly, Law Lab maintains offices

throughout the United States, including in Portland, Oregon; Atlanta, Georgia; San Diego,

California; Kansas City, Missouri and San Antonio and El Paso, Texas. *Id.* ¶ 4.

   Wherever those aliens end up, they will impose financial burdens on the States

involuntarily hosting them. CDC acknowledges as much: "[T]he flow of migration directly

impacts not only border communities and regions, but also destination communities and healthcare

resources of both," 86 Fed. Reg. at 42,835, especially if those aliens have COVID, *cf. Del. Dep't

of Nat. Res. v. EPA*, 785 F.3d 1, 10 (D.C. Cir. 2015). The record and findings in the *Texas* action

exemplify the financial harm:

> Texas proffers specific, uncontroverted evidence that it will experience increased
> financial hardship—most directly through healthcare spending. [Ex. 1 at 21 (citing
> 1 TEX. ADMIN. CODE §§ 366.903, 355.8201-8202, 355.8212-8215.] Included in
> Texas's appendix is a declaration from Lisa Kalakanis, the Data Dissemination and
> Reporting Director with the Texas Health and Human Services Commission's
> Office of Data Analytics and Performance. [Ex. 2 at App'x p.81.] Kalakanis
> testifies that Texas HHSC provides three principal categories of services and
> benefits to undocumented aliens in Texas: (1) Texas Emergency Medicaid; (2) the

Texas Family Violence Program; and (3) Texas Children's Health Insurance Program Perinatal Coverage. *Id.* at 82. Taking just one of those programs—Texas Emergency Medicaid—Kalakanis testifies that "[t]he total estimated cost to [Texas] for the provision of Emergency Medicaid services to undocumented immigrants residing in Texas was approximately $80 million in SFY 2007, $62 million in SFY 2009, $71 million in SFY 2011, $90 million in SFY 2013, and $73 million in SFY 2015." *Id.* at 83. She estimates the cost in SFY 2019 at $80 million. *Id.* Kalakanis testifies that based on her knowledge and expertise of the benefits and services provided to undocumented migrants by the Texas HHSC, "the total costs to the State of providing such services and benefits to undocumented immigrants will continue to reflect trends to the extent that the number of undocumented immigrants residing in Texas increases or decreases each year." *Id.* at 84.

Texas further establishes specific financial injuries through the costs of issuing of driver's licenses to illegal aliens (*Id.* at 96–107), providing education to UAC (*Id.* at 88–95), and incarcerating aliens convicted of crimes committed when they are not legally present in the United States (*Id.* at 108–10).

*Texas*, 589 F. Supp. 3d at 611-12. Likewise, evidence from Arizona and Missouri in the *Louisiana*

action:

According to Mark Napier, Chief of Staff for the Cochise County Sheriff's Office in Cochise County, Arizona, for the period from July 2020 to January 2021, only 27.6% of undocumented persons crossing the southern border were apprehended by DHS personnel. [Ex. 3 at WDLA-PI-161.] Further, from "January through September 2020 there were 181 sets of human remains recovered in the border region of Arizona's desert. Each of these recoveries results in the tremendous expenditure of law enforcement resources." [*Id.*] Mr. Napier further indicated that "[m]igrants abandoned by transnational criminal organizations trafficking in humans on the north side of the border frequently call local law enforcement in distress.... These often led to significant expenditures of county and Border Patrol resources to affect rescue in the hope of preventing additional migrant deaths." [*Id.*]

\* \* \* \* \*

Mark Dannels, the Sheriff of Cochise County, Arizona, submitted a declaration stating that "[i]ndividuals illegally crossing through [the border] cut trails, trample plant life, and leave behind litter and potentially hazardous waste including soiled clothing and excrement." [Ex. 3 at WDLA-PI-171.]

\* \* \* \* \*

According to Robert J. Trenschel, President and CEO of Yuma Regional Medical Center ("YRMC"), "[f]rom January through June 2019, ... an estimated 1,293 adult patients were brought to YRMC while in ICE custody" and that "[t]he estimated cost of [their] care in that six-month period was $810,433," but that only $264,383

was reimbursed, "leaving a $546,050 unreimbursed gap for that six-month period alone." [Ex. 3 at WDLA-PI-188.] "These cost estimates also do not include the substantial care expenses for the multiple mothers who delivered babies at YRMC while under ICE custody during that timeframe." [*Id.*]

\* \* \* \* \*

According to Maddie Green, Assistant Attorney General for Missouri, "Missouri spent an average of $10,654 per student in school year 2019-2020 regardless of immigration status," and further that "[a] 2018 study shows that an estimated 3,000 illegal alien school-aged children were enrolled in Missouri schools." [Ex. 3 at WDLA-PI-627.] "Missouri. expended $361,702 in emergency medical care costs for treatment of ineligible aliens during Fiscal Year 2020." [*Id.* at WDLA-PI-628.] In addition, "Missouri's Department of Revenue ("DOR") uses the Systemic Alien Verification of Entitlements ("SAVE") system to verify unlawful individuals' lawful immigration status at a cost of $0.80 for the initial inquiry and $0.50 for any additional inquiries. [*Id.*] In state fiscal year 2020, DOR paid $30,114.11 for SAVE inquiries." "Statistically, for every 1,000 aliens who remain unlawfully in the United States, 56 end up residing in Missouri." [*Id.*]

*Louisiana*, 2022 WL 1604901, at \*6-7. "The Fifth Circuit has found these types of specific injuries

sufficient to establish injury when a federal action would have enabled '500,000 illegal aliens in

Texas' to receive such benefits." *Texas*, 589 F. Supp. 3d at 612 (quoting *Texas v. United States*,

809 F.3d 134, 155-56 (5th Cir. 2015), *aff'd by an equally divided court*, 579 U.S. 547 (2016)).[3]

The States' standing is further bolstered in other ways. The States are entitled to special

solicitude in the standing analysis because the States have sovereign and quasi-sovereign interests

in controlling their borders, limiting the persons present within those borders, excluding persons

carrying communicable diseases, and the enforcement of immigration law. *See Massachusetts v.*

---

[3] MOUs that DHS executed with Arizona and Louisiana are in accord. In those MOUs, DHS admitted, among other things, that "a decrease or pause on returns or removals of removable or inadmissible aliens," "relaxation of the standards for granting return or removal," "an increase in releases from detention," "changes to immigration benefits or eligibility," or "rules, policies, procedures, and decisions that could result in significant increases to the number of people residing in a community" "result in direct and concrete injuries to [the signatory State], including increasing the rate of crime, consumption of public benefits and services, strain upon the healthcare system, and harm to the environment." *See* Ex. 3 at WDLA-PI-662-63, WDLA-PI-588-590.

*EPA*, 549 U.S. 497, 519-520 (2007); *see also, e.g.*, *Texas v. United States*, 50 F. 4th 498, 516 (5th Cir. 2022) ("The importance of immigration policy and its consequences to Texas, coupled with the restraints on Texas' power to make it, create a quasi-sovereign interest."). That interest applies not only to the Title 42 Orders, but even more so to the Final Rule. That rule is not limited to COVID, "but also future public health threats." 85 Fed. Reg. at 56,449. It accordingly "implement[s] a permanent procedure which the [CDC] Director may use to issue an order suspending the right to introduce persons into the United States when[ever] there is a serious danger of the introduction of a quarantinable communicable disease into the United States." *Id.* The States have limited power to themselves exclude aliens. *See, e.g.*, *Arizona v. United States*, 567 U.S. 387, 409-410 (2012). They have a quasi-sovereign interest in ensuring CDC is able to rapidly react to emerging public health threats and exclude aliens to the maximum extent permitted by Congress, *i.e.*, precisely what the Final Rule implements. And the Final Rule itself backhandedly recognizes the States' interest by providing that CDC may "consult" with them. 42 C.F.R. 71.40. Regardless, as *Louisiana* and *Texas* actions illustrate, the States have a procedural right under the APA to notice and comment regarding any changes to CDC's Title 42 implementing regulation and the associated Title 42 Orders. The States seek intervention in this case to avoid the federal Defendants' circumventing that procedural right via a friendly surrender. Special solicitude applies.

### C.   The States' Interests Are Not Adequately Represented.

A prospective intervenor need only make a "minimal" showing that its interests are not adequately protected by any parties in the litigation. *Price*, 2017 WL 3271445, at *2 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)); *see United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432 (D.C. Cir. 2022) ("A would-be intervenor is adequately represented when she 'offer[s] *no* argument not also pressed by' an

existing party." (emphasis added)). This light burden can be satisfied by merely by showing that the government has "equivocat[ed] about whether" it will "appeal the adverse ruling of the district court" or will otherwise protect an intervenors' interests. *Id.* (quoting *Smoke*, 252 F.3d at 471); *see Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001) (federal government's "silence on any intent to defend the [intervenors'] special interests is deafening") (citation omitted); *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (same). Moreover, the government does not adequately represent an intervenor's interests after the government changes its position such that it "no longer share[s] the views of Intervenors" on essential questions of law in the litigation. *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009).

The States here have "raised sufficient doubt concerning the adequacy" of the Federal Defendants' representation of their interests. The Federal Defendants' stay motion certainly did not assure the Court that they would "continue to prosecute the appeal." *Price*, 2017 WL 3271445, at *2. On the contrary, they assured the Court the opposite was true. And Federal Defendants' representation to the Western District of Louisiana clearly stated that they intend to "begin processing all noncitizens entering the United States pursuant to Title 8" after this Court's stay has elapsed.

Federal Defendants have essentially abandoned their defense of Title 42, and it is doubtful that they will make any further arguments in support of it, let alone make all arguments that the States would press. *Guernsey*, 45 F.4th at 432. Thus, the Federal Defendants fail to adequately represent the State's interests in the continued validity of Title 42.

## II.   PERMISSIVE INTERVENTION IS WARRANTED.

Even if the Court declines to grant the States' motion to intervene as of right, this is precisely the type of case where permissive intervention is warranted. An applicant for permissive intervention should present the Court with "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

First, the States have standing to protect their unique interests in this litigation, and there is subject-matter jurisdiction because this case presents a federal question. *See* 7C Charles Alan Wright et al., Federal Practice and Procedure § 1916 (3d ed. 2007) ("[T]he need for independent jurisdictional grounds is almost entirely a problem of diversity litigation. In federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant.").

Second, as discussed, the States' motion to intervene is timely. It became clear only this week that Federal Defendants do not seek to challenge this Court's ruling on appeal.

Third, the States' position that the Title 42 policy validly authorizes Federal Defendants to expel aliens has perfect overlap with the issues presented in this case and so easily satisfies the requirement to show a "common question of law or fact" with the main action. *National Children's Ctr.*, 146 F.3d at 1046.

At bottom, the important issues in this case should be decided on the merits, rather than through surrender. A central issue in this case is the costs imposed on the States. Allowing intervention will ensure those interests are represented. A favorable exercise of discretion is therefore warranted.

## CONCLUSION

For the foregoing reasons, the States' motion to intervene should be granted.[4]


Respectfully submitted,

Dated:  November 21, 2022

**JEFF LANDRY**                                    **MARK BRNOVICH**
Attorney General of Louisiana                Attorney General of Arizona

/s/ Elizabeth B. Murrill                          /s/ Drew C. Ensign
ELIZABETH B. MURRILL (La #20685)    DREW C. ENSIGN
Solicitor General                                   Deputy Solicitor General
J. SCOTT ST. JOHN (La #36682)         Arizona Attorney General's Office
Deputy Solicitor General                       2005 N. Central Avenue
LOUISIANA DEPARTMENT OF JUSTICE   Phoenix, Arizona 85004
1885 N. Third Street                             Telephone: (602) 542-5200
Baton Rouge, Louisiana 70804             Drew.Ensign@azag.gov
Tel: (225) 326-6766
murrille@ag.louisiana.gov                     *Attorneys for the State of Arizona*
stjohnj@ag.louisiana.gov

*Attorneys for the State of Louisiana*

---

[4]  The States also respectfully seek leave from the requirement of Rule 24(c) to attach a responsive pleading.  Such an omission without seeking leave "is a purely technical defect which does not result in the disregard of any substantial right." *Westchester Fire Ins. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009) (quotation marks omitted). "Courts ... have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion." *Beckman Indus. Inc., v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992).

A responsive pleading—which would overwhelmingly consist of *pro forma* denials—would not serve any meaningful purpose at this time. But to the extent that this might be otherwise, the States will adopt by reference the answer of Federal Defendants.

**STEVE MARSHALL**
Attorney General of Alabama

/s/ Edmund G. LaCour Jr.
EDMUND G. LACOUR JR.
Solicitor General
State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Attorneys for the State of Alabama*

**TREG R. TAYLOR**
Attorney General of Alaska
CORI M. MILLS
Deputy Attorney General of Alaska

/s/ Christopher A. Robinson
CHRISTOPHER A. ROBINSON
Alaska Bar No. 2111126
Assistant Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501-1994
chris.robison@alaska.gov

*Attorneys for the State of Alaska*

**DEREK SCHMIDT**
Attorney General of Kansas

/s/ Brant M. Laue
BRANT M. LAUE*
Solicitor General
OFFICE OF KANSAS ATTORNEY
GENERAL
120 SW 10th Avenue, 3rd Floor
Topeka, KS 66612-1597
(785) 368-8435 Phone
Brant.Laue@ag.ks.gov

*Attorneys for the State of Kansas*

**DANIEL CAMERON**
Attorney General of Kentucky

/s/ Marc Manley
MARC MANLEY*
Associate Attorney General
KENTUCKY OFFICE OF THE
ATTORNEY GENERAL
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5478

*Attorneys for the Commonwealth of Kentucky*

**LYNN FITCH**
Attorney General of Mississippi

/s/ Justin L. Matheny
JUSTIN L. MATHENY
Deputy Solicitor General
OFFICE OF THE MISSISSIPPI
ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205-0220
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Attorneys for the State of Mississippi*

**DOUGLAS J. PETERSON**
Attorney General of Nebraska

/s/ James A. Campbell
JAMES A. CAMPBELL*
Solicitor General
OFFICE OF THE NEBRASKA
ATTORNEY GENERAL
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2682
jim.campbell@nebraska.gov

*Attorneys for the State of Nebraska*

**DAVE YOST**
Attorney General of Ohio

/s/ Ben Flowers
BEN FLOWERS
 Solicitor General
Office of Ohio Attorney General Dave Yost
Office number: (614) 728-7511
Cell phone:     (614) 736-4938
benjamin.flowers@ohioattorneygeneral.gov

*Attorneys for the State of Ohio*

**JOHN M. O'CONNOR**
Attorney General of Oklahoma

/s/ Bryan Cleveland
BRYAN CLEVELAND*
Deputy Solicitor General
OKLAHOMA ATTORNEY GENERAL'S
OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921

*Attorneys for the State of Oklahoma*

**ALAN WILSON**
Attorney General of South Carolina

/s/ James Emory Smith, Jr.
JAMES EMORY SMITH, JR.
Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
(803) 734-3642
esmith@scag.gov

*Attorneys for the State of South Carolina*

**KEN PAXTON**
Attorney General of Texas

/s/ Aaron F. Reitz
AARON F. REITZ*
Deputy Attorney General for Legal Strategy
LEIF A. OLSON*
Special Counsel
OFFICE OF THE ATTORNEY GENERAL
OF TEXAS
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1700
Aaron.Reitz@oag.texas.gov
Leif.Olson@oag.texas.gov

*Attorneys for the State of Texas*

**JASON S. MIYARES**
Attorney General of Virginia

/s/ Andrew N. Ferguson
ANDREW N. FERGUSON
Solicitor General
LUCAS W.E. CROSLOW
Deputy Solicitor General
OFFICE OF THE VIRGINIA ATTORNEY
GENERAL
202 North 9th Street
Richmond, Virginia 23219
(804) 786-7704
AFerguson@oag.state.va.us

*Attorneys for the Commonwealth of Virginia*

**PATRICK MORRISEY**
Attorney General of West Virginia

LINDSAY SEE*
Solicitor General
MICHAEL R. WILLIAMS
Deputy Solicitor General
OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(681) 313-4550
Lindsay.S.See@wvago.gov

*Attorneys for the State of West Virginia*


**BRIDGET HILL**
Attorney General of Wyoming

/s/ Ryan Schelhaas
RYAN SCHELHAAS*
Chief Deputy Attorney General
OFFICE OF THE WYOMING ATTORNEY GENERAL
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-5786
ryan.schelhaas@wyo.gov

*Attorneys for the State of Wyoming*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NANCY GIMENA HUISHA-HUISHA, on behalf of herself and others similarly situated,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>ALEJANDRO MAYORKAS, Secretary of Homeland Security, *et al*,<br><br>*Defendants.* | NO: Civil Action No. 21-100 (EGS)<br><br><br>Hon. Emmet G. Sullivan<br><br><br>Oral Argument Requested |

### <u>ORDER</u>

The Matter came before the Court on _____, 2022 on the motion of the States to intervene under Federal Rule of Procedure 24, both as of right and permissively. The Court being fully advised in the premises, IT IS HEREBY ORDERED that the State's Motion to Intervene is GRANTED.


IT IS SO ORDERED.

ENTERED:
By the Court:

Date:_____

_____
Hon. Emmet G. Sullivan
United States District Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of November, 2022, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing, which will send notice of such filing to all registered CM/ECF users.


 s/ Drew C. Ensign
Attorney for the State of Arizona