UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NANCY GIMENA HUISHA-HUISHA, on behalf of herself and others similarly situated,<br><br>        Plaintiffs,<br><br>      v.<br><br>ALEJANDRO MAYORKAS, Secretary of Homeland Security, et al.,<br><br>        Defendants. | Civ. A. No. 21-100 (EGS) |

**DEFENDANTS' OPPOSITION TO PROPOSED INTERVENORS'
MOTION TO INTERVENE**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    A.    Plaintiffs Brought Suit in January 2021 and Obtained Preliminary Injunction ............ 2

    B.    The D.C. Circuit Denied Texas's Motion to Intervene and Affirmed This Court's Preliminary Injunction in Part ................................................................ 3

    C.    CDC Sought to Terminate the August 2021 Title 42 Order ........................................ 4

    D.    States Challenged the Termination Order in the Western District of Louisiana ....................................................................................................... 5

    E.    This Court's November 15 Order Vacated CDC's Title 42 Regulation and Orders ....................................................................................................... 6

    F.    Proposed Intervenors Move to Intervene ................................................................ 7

STANDARD OF REVIEW ................................................................................................ 7

ARGUMENT ...................................................................................................................... 8

    I.    PROPOSED INTERVENORS ARE NOT ENTITLED TO INTERVENTION AS OF RIGHT ............................................................... 8

        A.    Proposed Intervenors Lack Standing or Any Legally Protected Interest ....................................................................................................... 8

        B.    Proposed Intervenors' Motion is Untimely ...................................... 14

        C.    Defendants Adequately Represent Any Interests That Proposed Intervenors Might Have in This Litigation ......................................... 17

    II.    PROPOSED INTERVENORS' REQUEST FOR PERMISSIVE INTERVENTION SHOULD BE DENIED ................................................ 18

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Aeronautical Radio, Inc. v. FCC,*
    983 F.2d 275 (D.C. Cir. 1993) ................................................................................7

*Allen v. Wright,*
    468 U.S. 737 (1984) ...............................................................................................11

*Amador Cnty., Cal. v. U.S. Dep't of the Interior,*
    772 F.3d 901 (D.C. Cir. 2014) ...............................................................................14

*Arizona v. Biden,*
    40 F.4th 375 (6th Cir. 2022)..................................................................8, 9, 10, 11

*Arizona v. Biden,*
    31 F.4th 469 (6th Cir. 2022)...................................................................................13

*Arpaio v. Obama,*
    27 F. Supp. 3d 185 (D.D.C. 2014) .................................................................. 9, 11

*Associated Builders & Contractors, Inc. v. Herman,*
    166 F.3d 1248 (D.C. Cir. 1999) .............................................................................14

*California v. Texas,*
    141 S. Ct. 2104 (2021)............................................................................................11

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
    142 S. Ct. 1002 (2022)............................................................................................16

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) .................................................................................................8

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n,*
    788 F.3d 312 (D.C. Cir. 2015) ............................................................................ 8-9

*Dep't of Com. v. New York,*
    139 S. Ct. 2551 (2019)..................................................................................10, 11-12

*Deutsche Bank Nat'l Trust Co. v. FDIC,*
    717 F.3d 189 (D.C. Cir. 2013) ................................................................................7

*Dimond v. District of Columbia,*
    792 F.2d 179 (D.C. Cir. 1986) ...............................................................................14

*EEOC v. Nat'l Children's Ctr., Inc.,*
    146 F.3d 1042 (D.C. Cir. 1998) ...................................................................... 8, 18

*Fed. Election Comm'n v. NRA Political Victory Fund,*
  513 U.S. 88 (1994) ................................................................................................18

*Florida v. Mellon,*
  273 U.S. 12 (1927) ..................................................................................................9

*Huisha-Huisha v. Mayorkas,*
  27 F.4th 718 (D.C. Cir. 2022) ................................................................................4

*Huisha-Huisha v. Mayorkas,*
  560 F. Supp. 3d 146 (D.D.C. 2021) .................................................................... 2, 3

*Huisha-Huisha v. Mayorkas,*
  --- F. Supp. 3d ---, 2022 WL 16948610 (D.D.C. Nov. 15, 2022) .........................2

*In re Endangered Species Act Section 4 Deadline Litig.,*
  277 F.R.D. 1 (D.D.C. 2011) *aff'd,* 704 F.3d 972 (D.C. Cir. 2013) ...................7-8

*Jones v. Prince George's Cnty.,*
  348 F.3d 1014 (D.C. Cir. 2003) ........................................................................ 7, 17

*Keepseagle v. Vilsack,*
  307 F.R.D. 233 (D.D.C. 2014) .......................................................................... 8, 18

*Louisiana v. CDC,*
  --- F. Supp. 3d ---, 2022 WL 1604901 (W.D. La. May 20, 2022)...................... 5, 10

*Manitoba v. Bernhardt,*
  923 F.3d 173 (D.C. Cir. 2019) ..............................................................................13

*Massachusetts v. EPA,*
  549 U.S. 497 (2007) ..............................................................................................12

*Nat'l Fair Hous. All. v. Carson,*
  330 F. Supp. 3d 14 (D.D.C. 2018) ..........................................................................7

*Nken v. Holder,*
  556 U.S. 418 (2009) ..............................................................................................15

*Printz v. United States,*
  521 U.S. 898 (1997) ..............................................................................................10

*Raines v. Byrd,*
  521 U.S. 811 (1997) ...................................................................................... 8, 9, 10

*Smoke v. Norton,*
  252 F.3d 468 (D.C. Cir. 2001) ..............................................................................16

*Texas v. Biden (MPP)*,
  20 F.4th 928 (5th Cir. 2021) ........................................................................................11

*Texas v. Biden*,
  589 F. Supp. 3d 595 (N.D. Tex. 2022) ........................................................................10

*Texas v. United States (DAPA)*,
  809 F.3d 134 (5th Cir. 2015) ......................................................................................11

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .................................................................................................12

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) .....................................................................................................17

*United States v. British Am. Tobacco Australian Servs. LTD.*,
  437 F.3d 1235 (D.C. Cir. 2006) ..................................................................................14

**Statutes**

5 U.S.C. § 3106 ..................................................................................................................18

28 U.S.C. § 516 ..................................................................................................................18

28 U.S.C. § 519 ..................................................................................................................18

42 U.S.C. § 265 .........................................................................................................1, 2, 4

**Rules**

Federal Rule of Civil Procedure 24 ............................................................................ 7, 8

Federal Rule of Civil Procedure 54 .......................................................................... 6, 14

**Regulations**

28 C.F.R. § 0.20 ..................................................................................................................2

42 C.F.R. § 71.40 ............................................................................................................ 3, 6

Public Health Reassessment and Order Suspending the Right To Introduce Certain
  Persons From Countries Where a Quarantinable Communicable Disease Exists,
  86 Fed. Reg 42,828 (Aug. 5, 2021) ...............................................................................3

Public Health Determination and Order Regarding Suspending the Right To
  Introduce Certain Persons From Countries Where a Quarantinable
  Communicable Disease Exists
  87 Fed. Reg.19,941 (Apr. 6, 2022) ...............................................................4, 5, 15, 16

## INTRODUCTION

More than twenty-two months after Plaintiffs initiated this action, and more than three months after Plaintiffs moved for partial summary judgment and requested the relief that the Court ultimately granted, sixteen States ("Proposed Intervenors") move to intervene in this matter to defend CDC's regulation implementing 42 U.S.C. § 265 ("Title 42" or "Section 265") and the orders issued thereunder.  A panel of the D.C. Circuit has already rejected a similar request from one of the Proposed Intervenors—the State of Texas—holding unanimously that Texas had not satisfied the standard to intervene to defend CDC's exercise of Title 42 authority on interlocutory appeal.  This Court should do the same and deny the intervention motion, which fails for the following reasons.

*First*, Proposed Intervenors have not established Article III standing or a legally protected interest that would entitle them to intervene as defendants in this action.  Proposed Intervenors assert that the vacatur of the operative Title 42 Order will cause more noncitizens to be present within their borders, which will lead them to expend more resources on law enforcement and social services.  But a State may not assert standing based on such indirect effects.  Federal policies regulating people within a State will inevitably have derivative effects on the State's exercise of its own governmental powers.  But the autonomy of the national and state sovereigns, acting directly upon individuals within their respective spheres, refutes the notion that a State has a legally and judicially cognizable interest in avoiding the indirect effects of federal policies.  Nor can Proposed Intervenors' alleged injuries be fairly traceable to the vacatur of the Title 42 implementing regulation and orders.  The vacatur will simply result in the resumption of immigration processing under longstanding, congressionally enacted immigration laws in Title 8 of the U.S. Code.  Proposed Intervenors' alleged injuries are at most traceable to those immigration laws, which are not at issue here.

*Second*, the intervention motion is untimely.  Proposed Intervenors had multiple opportunities to intervene sooner in this action, and yet they waited until this Court had already ruled on Plaintiffs' partial summary judgment motion and granted Plaintiffs' requested relief.  While Texas did attempt to intervene in the Court of Appeals on a prior interlocutory appeal, none of the Proposed Intervenors

sought to intervene in this litigation in this Court, even after CDC made clear in April 2022 that it believed the operative Title 42 Order was no longer necessary to protect the public health, and even after the government informed Proposed Intervenors of the Plaintiffs' motion for partial summary judgment in August 2022.  Instead, Proposed Intervenors chose to purse their own separate action against the government in a different forum, and they did so fully aware of this action and the specific relief that Plaintiffs were seeking.  Proposed Intervenors seek to excuse the delay on the basis that the government recently purportedly "abandoned [its] defense of Title 42" and would not "seek[] an appeal."  Mot. to Intervene, 10, 16, ECF No. 168 ("Mot.").  But the government has not concluded its decisionmaking regarding whether to appeal this Court's order.  *See* 28 C.F.R. § 0.20(b).  And although the government did not seek a stay pending any appeal, Proposed Intervenors knew or should have known months ago that the government might not seek such a stay given CDC's finding in April that the Title 42 Order was no longer necessary in the interest of the public health.

*Third*, Proposed Intervenors are not able to satisfy their burden to show that the government does not adequately represent their interests.  The government has vigorously defended the lawfulness of CDC's Title 42 orders throughout this litigation.  While Proposed Intervenors disagree with the government's decision not to seek a stay (beyond a short period to allow implementation) or its yet-to-be-made decision on an appeal, that disagreement does not justify intervention.  That is especially so here given that it is the Department of Justice—not the Proposed Intervenor States—that is statutorily charged with defending the federal government's policies, including CDC's exercise of its Title 42 authority.

## BACKGROUND

### A.     Plaintiffs Brought Suit in January 2021 and Obtained Preliminary Injunction

The Court is familiar with the history of CDC's Title 42 orders and this litigation.  *See Huisha-Huisha v. Mayorkas*, --- F. Supp. 3d ---, 2022 WL 16948610 (D.D.C. Nov. 15, 2022); *Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146, 156 (D.D.C. 2021).  In short, this action challenges a series of public health orders issued pursuant to CDC's authority under the Public Health Service Act, 42 U.S.C. § 265, to temporarily suspend the right to introduce into the United States certain noncitizens traveling from

Mexico and Canada who would otherwise be held in congregate settings in ports of entry or U.S. Border Patrol stations at or near the border.  The currently operative order was issued in August 2021. *See* 86 Fed. Reg. 42,828 (Aug. 5, 2021) ("August 2021 Order").

Plaintiffs brought this suit in January 2021 on behalf of a class of noncitizen family units to challenge CDC's "Title 42 Policy," which Plaintiffs characterized as consisting of CDC's regulation at 42 C.F.R. § 71.40 and the orders issued thereunder.  *See* Compl. ¶ 1, ECF No. 1.  Plaintiffs thereafter moved for a preliminary injunction on the grounds that Section 265 did not authorize the expulsion of individuals who had already crossed the border into the United States and that such expulsions violated certain immigration laws, ECF No. 57, which covered the first five counts of the six-count complaint, *see* 2d Am. Compl. ¶¶ 81–106.

In September 2021, this Court certified the class and preliminarily enjoined the application of the "Title 42 Process"—defined by the Court as "the process developed by the CDC and implemented by the August 2021 Order," *Huisha-Huisha*, 560 F. Supp. 3d at 159—to the class.  The Court found that Section 265 likely did not authorize the government to expel noncitizens.  *Id.* at 166–71.  The government appealed the Court's preliminary injunction and sought a stay pending appeal, which the D.C. Circuit granted.  *Huisha-Huisha v. Mayorkas*, No. 21-5200 (D.C. Cir. Sept. 30, 2021), Doc. #1916334.

## B.   The D.C. Circuit Denied Texas's Motion to Intervene and Affirmed This Court's Preliminary Injunction in Part

While the government's appeal was pending, the State of Texas moved to intervene in the D.C. Circuit to "defend the lawfulness of the 'Title 42 Process.'"  Mot. to Intervene at 1, *Huisha-Huisha v. Mayorkas*, No. 21-5200 (D.C. Cir. Oct.. 11, 2021), Doc. #1917572.  Texas argued that it had a "critical interest in the continued use of the Title 42 Process because the State" would "suffer[] tremendous and irreparable injury" if the Title 42 Order were to be enjoined as to noncitizen family units and there was an "uncontrolled influx" of noncitizens crossing the border into Texas.  *Id.*

The parties opposed Texas's motion.  The government argued, among other things, that Texas's motion was untimely, as Texas had waited to intervene until more than nine months after

Plaintiffs filed suit.  Gov't Opp. to Mot. to Intervene at 8–9, *Huisha-Huisha v. Mayorkas*, No. 21-5200 (D.C. Cir. Oct. 15, 2021), Doc. #1918415.  The government also argued that to the extent Texas was claiming an interest in compelling the government to expel more noncitizens than what the government was already doing, Texas lacked any cognizable legal interest in compelling a stricter enforcement of federal law.  *Id.* at 19.  Plaintiffs opposed Texas's motion on similar grounds.  Pls.' Opp. to Mot. to Intervene, *Huisha-Huisha v. Mayorkas*, No. 21-5200 (D.C. Cir. Oct. 15, 2021), Doc. #1918396.

On October 26, 2021, a unanimous panel of the D.C. Circuit denied Texas's motion to intervene, holding that Texas had not demonstrated that its motion met the standards for intervention on appeal.  Order, *Huisha-Huisha v. Mayorkas*, No. 21-5200 (D.C. Cir. Oct. 26, 2021), Doc. #1919599.  The Court instead allowed Texas to participate as amicus curiae.  *Id.*

On March 4, 2022, the D.C. Circuit affirmed the preliminary injunction in part, holding that Section 265 likely authorizes the expulsion of covered noncitizens, but that such expulsions may not be to places where the noncitizens likely will be persecuted or tortured.  *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 732 (D.C. Cir. 2022).

## C.     CDC Sought to Terminate the August 2021 Title 42 Order

On April 1, 2022, CDC terminated the August 2021 Order.  87 Fed. Reg. 19,941 ("Termination Order").  In making its determination, CDC evaluated the then-current status of the COVID-19 pandemic, which was substantially different from the environment in which the August 2021 Order was issued.  CDC cited data showing that COVID-19 case numbers in the United States had fallen by 95% and that death and hospitalization rates had also undergone a "swift descent."  *Id.* at 19,944 & n.24, 19,948.  CDC assessed that public health officials had gained an increased understanding of the science behind COVID-19.  *Id.* at 19,947–48.  And CDC determined that the risk posed by COVID-19 in congregate settings did not "present a sufficiently serious danger to public health to necessitate maintaining the August Order."  *Id.* at 19,951–52.  In light of these considerations, CDC determined that "the readily available and less burdensome public health mitigation tools to combat the disease render an order under 42 U.S.C. § 265 to prevent a serious danger to the public health unnecessary."

*Id.* at 19,953.  CDC set an implementation date of May 23, 2022 to provide DHS time to fully resume immigration processing under Title 8 of the U.S. Code.  *Id.* at 19,956.

**D.      States Challenged the Termination Order in the Western District of Louisiana**

On April 3, 2022, the States of Louisiana, Arizona, and Missouri filed a complaint seeking to enjoin the enforcement of the Termination Order.  *See* Compl., *Louisiana v. CDC*, No. 6:22-CV-00885 (W.D. La. Apr. 3, 2022), ECF No. 1.  The States alleged that CDC had violated the Administrative Procedure Act ("APA") by issuing the Termination Order without conducting notice-and-comment rulemaking and that the Termination Order was arbitrary and capricious.  *Id.*  Texas and 20 additional states thereafter joined the suit.  *See* Am. Compl., *Louisiana v. CDC*, No. 6:22-CV-00885 (W.D. La. Apr. 14, 2022), ECF No. 10 (adding 18 additional states); Second Am. Compl., *Louisiana v. CDC*, No. 6:22-CV-00885 (W.D. La. May 5, 2022), ECF No. 44 (adding 3 additional states).  All Proposed Intervenors in this action are plaintiffs in the *Louisiana* suit.

On May 20, 2022, the U.S. District Court for the Western District of Louisiana preliminarily enjoined enforcement of the Termination Order on the ground that CDC likely was required to conduct notice-and-comment rulemaking in issuing the Termination Order but failed to do so. *Louisiana v. CDC*, --- F. Supp. 3d ---, No. 6:22-CV-00885, 2022 WL 1604901 (W.D. La. May 20, 2022). The government appealed, No. 22-30303 (5th Cir.), but did not seek a stay pending appeal.

Because the *Louisiana* preliminary injunction directed the government to file monthly reports regarding its enforcement of Title 42, *see* Prelim. Inj., *Louisiana v. CDC*, No. 6:22-CV-00885 (W.D. La. May 20, 2022), ECF No. 91, the government noted in those reports Plaintiffs' motion for partial summary judgment in this action and Plaintiffs' request to vacate and set aside the "Title 42 Policy," among other relief, *see, e.g.*, Defs.' Monthly Report at 6 n.2, *Louisiana v. CDC*, No. 22-cv-00885 (W.D. La. Aug. 16, 2022), ECF No. 154.  The government also apprised the *Louisiana* plaintiffs in those reports of the status of this litigation.  *See id.* (noting that the Court had set a hearing on Plaintiffs' motion); ECF No. 155 at 6 n.2 (same); ECF No. 159 at 7 n.1 (noting that Plaintiffs' motion was fully briefed).

**E.      This Court's November 15 Order Vacated CDC's Title 42 Regulation and Orders**

On November 15, 2022, the Court granted Plaintiffs' motion for partial summary judgment and vacated CDC's Title 42 implementing regulation as well as the August 2021 Order.  ECF No. 164.  The government had opposed Plaintiffs' motion, arguing that the administrative record amply demonstrated that the Title 42 Order was the product of reasoned decision-making.  ECF No. 147.  The government had also argued that the issue of vacatur was premature, where Plaintiffs had moved for partial summary judgment on only one count of their Second Amended Complaint.  ECF No. 160.  But the Court disagreed, entering an order "vacat[ing] and set[ting] aside the Title 42 policy— consisting of the regulation at 42 C.F.R. § 71.40 and all orders and decision memos issued by [CDC or HHS] suspending the right to introduce certain persons into the United States."  ECF No. 164.  The Court also "declare[d] the Title 42 policy to be arbitrary and capricious in violation of the Administrative Procedure Act" and "permanently enjoin[ed] Defendants and their agents from applying the Title 42 policy with respect to Plaintiff Class Members."  *Id.*

That same day, the government moved to stay the Court's order for five weeks to allow DHS time to prepare to transition to immigration processing under Title 8.  ECF No. 166.  The next day, the Court granted the government's motion, staying its order until midnight EST on December 21, 2022.  Minute Order, *Huisha-Huisha v. Mayorkas*, No. 21-100 (EGS) (D.D.C. Nov. 16, 2022).

Shortly after the Court granted the government's motion to stay, the government notified the *Louisiana* court of this Court's November 15 decision and the order granting a temporary stay.  *See* Notice of Decision Vacating Title 42 Orders, *Louisiana v. CDC*, No. 6:22-CV-00885 (W.D. La. Nov. 16, 2022), ECF No. 164.  The notice explained that pursuant to those orders, the government would begin processing all noncitizens under Title 8 beginning on December 21, 2022.  *Id.*

On November 21, 2022, the government filed a motion for entry of partial final judgment on Plaintiffs' arbitrary-and-capricious claim under Federal Rule of Civil Procedure 54(b).  ECF No. 167.  The Court granted the motion and entered final judgment under Rule 54(b).  ECF No. 170.  The government is presently in the process of considering whether to appeal this Court's November 15 order and the Rule 54(b) final judgment.

**F.      Proposed Intervenors Move to Intervene**

On November 21, 2022, fifteen States filed this instant motion.  Mot. to Intervene ("Mot."), ECF No. 168.  Thereafter the State of Montana filed a motion for joinder, which the Court granted. *See* Minute Order, *Huisha-Huisha v. Mayorkas*, No. 21-100 (EGS) (D.D.C. Nov. 29, 2022).  The States of Utah, Missouri, and Tennessee also filed a motion for joinder, which the Court denied for failing to comply with the duty to confer and for failing to attach a proposed order.  *See* Minute Order, *Huisha-Huisha v. Mayorkas*, No. 21-100 (EGS) (D.D.C. Nov. 29, 2022) (citing LCvR 7(c) & (m)).

Just as Texas had unsuccessfully argued in the Court of Appeals when seeking to intervene in the interlocutory appeal of this Court's preliminary injunction, Proposed Intervenors argue that they have an interest in this action because they will "face increased migrant flows and increased releases of aliens if the Title 42 process is terminated."  Mot. 11.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 24(a)(2) establishes four requirements for intervention as of right:  "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests."  *Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013).  The putative intervenor must "satisfy all four elements of the Rule in order to intervene as of right."  *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1019 (D.C. Cir. 2003).  In addition, a party seeking to intervene as of right must also demonstrate Article III standing.  *Deutsche Bank Nat'l Trust*, 717 F. 3d at 1323; *see also Aeronautical Radio, Inc. v. FCC*, 983 F.2d 275, 284 (D.C. Cir. 1993) (dismissing intervenor who failed to "satisfy the requirements of Article III standing"); *Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14, 66 (D.D.C. 2018) (denying State's motion to intervene where State failed to establish standing).  "Because a prospective intervenor's Article III standing presents a question going to this Court's jurisdiction, the Court must address standing before considering the four-part test for evaluating intervention as of right."  *In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. 1, 5 (D.D.C. 2011) (Sullivan, J.), *aff'd*, 704 F.3d 972 (D.C. Cir. 2013).

Federal Rule of Civil Procedure 24(b)(1)(B) provides for permissive intervention. "[P]ermissive intervention is an inherently discretionary enterprise." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). The proposed intervenor must present: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Id.* The proposed intervenor must also demonstrate standing for permissive intervention. *Keepseagle v. Vilsack*, 307 F.R.D. 233, 245-46 (D.D.C. 2014) (Sullivan, J.).

## ARGUMENT

## I. PROPOSED INTERVENORS ARE NOT ENTITLED TO INTERVENTION AS OF RIGHT

Proposed Intervenors cannot establish that they are entitled to intervention as of right for at least three independent reasons: (1) they lack Article III standing or any legally protected interest in this action, (2) their motion is untimely, and (3) the government adequately represents their interests.

### A. Proposed Intervenors Lack Standing or Any Legally Protected Interest

As a threshold matter, Proposed Intervenors fail to show that they have standing or any legally protected interest in this action. "Article III of the U.S. Constitution permits federal courts to adjudicate 'cases or controversies,' not any political dispute that happens to arise between the state and federal executive branches." *Arizona v. Biden*, 40 F.4th 375, 383 (6th Cir. 2022). As the Supreme Court has explained, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citation omitted). One element of this constitutional limitation is that a party must establish standing. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). All parties seeking to intervene under Rule 24(a)—including putative defendant-intervenors—must demonstrate standing. *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015). "The standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability." *Id.*

Here, Proposed Intervenors fail to carry their burden of establishing standing.  Proposed Intervenors assert that once Title 42 ends and the government resumes immigration processing under Title 8, border states such as Arizona and Texas "will face increased migrant flows and increased releases" of noncitizens, and that these noncitizens will "flow to other States, too."  Mot. 11.  "Wherever [they] end up," Proposed Intervenors contend, these noncitizens will impose "financial burdens" on the States in the form of increased health care, education, and law enforcement costs.  Mot. 12–14.  This theory of standing fails for at least two reasons.

*First*, Proposed Intervenors' assertions about diffuse and widely shared societal costs resulting from a potential increase in the States' population do not constitute a "judicially cognizable" injury or a "legally protected" interest.  *Raines*, 521 U.S. at 819.  A State "has not suffered an injury in fact to a legally cognizable interest" when "a federal government program is anticipated to produce an increase in that state's population and a concomitant increase in the need for the state's resources."  *Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015).  "To accept such a broad interpretation of the injury requirement would permit nearly all state officials to challenge a host of Federal laws."  *Id.*  For these reasons, the Sixth Circuit recently rejected Arizona, Montana and Ohio's attempt to rely on the same theory of standing in a suit challenging DHS's immigration enforcement priorities, holding that the States could not establish standing simply because a federal policy had indirect financial effects on the States.  *Arizona*, 40 F.4th at 383–85.  Instead, a State generally must show that the challenged action "directly injure[s]" the State.  *Id.* at 383; *see also, e.g.*, *Florida v. Mellon*, 273 U.S. 12, 18 (1927) (holding that Florida lacked standing to challenge a federal inheritance tax that would cause the State financial harm by prompting the withdrawal of property from the State and diminishing the States' tax base, because any such harm was "at most, only remote and indirect" and not a "direct injury").

Here, the vacatur of CDC's Title 42 orders and resumption of immigration processing under longstanding, congressionally authorized immigration laws would not "directly injure the States."  *Arizona*, 40 F.4th at 383.  This is not a situation where the federal government has required a State to act or to refrain from acting, determined how much federal funding it receives, or deprived it of a legal

right.  *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2565 (2019) (relying on federal funding).  The resumption of immigration processing under Title 8 simply tells federal officials how to enforce federal law in a field that the Constitution commits to the federal government.  Any indirect effects on States do not qualify as "legally" and "judicially cognizable" injuries.  *Raines*, 521 U.S. at 819.  In our federal system, policies regulating people within a State will inevitably have derivative effects on the State's exercise of its own governmental powers.  But the autonomy of the national and state sovereigns, acting directly upon individuals "within their respective spheres," *Printz v. United States*, 521 U.S. 898, 920 (1997) (citation omitted), refutes the notion that a State has a judicially cognizable interest in avoiding the indirect effects of federal policies.

Under Proposed Intervenors' theory of standing, any federal action that results in "increased migrant flows" would establish standing because it indirectly increases the States' expenditures.  Mot. 12–14.  Other States could use equivalent logic to claim injury from any federal action *reducing* their noncitizen populations, on the theory that noncitizens pay taxes or otherwise contribute to the State's economy.  If such indirect financial effects satisfied Article III standing, every immigration-policy dispute between the federal government and the States would end up in federal court.  Nor is the problem limited to immigration.  Virtually any federal action—from prosecuting crime to imposing taxes to managing federal property—could be said to have some indirect effect on state finances.  Crediting Proposed Intervenors' theory would inject the federal courts into all manner of policy controversies at the behest of States seeking to secure by court order what they could not obtain through the political process.

In contending that they nonetheless have Article III standing, Proposed Intervenors note that two federal district courts held that States had a protected interest in the continued validity of the "Title 42 Policy."  Mot. 10 (citing *Louisiana v. CDC*, No. 6:22-CV-00885, 2022 WL 1604901, at *10– 15 (W.D. La. May 20, 2022); *Texas v. Biden*, 589 F. Supp. 3d 595, 610–13 (N.D. Tex. 2022)).  Those decisions relied on Fifth Circuit precedent holding that States had standing to challenge an immigration policy that would increase the number of noncitizens in a State and increase the State's expenditures.  *See, e.g., Texas v. Biden (MPP)*, 20 F.4th 928, 970–71 (5th Cir. 2021); *Texas v. United States*

*(DAPA)*, 809 F.3d 134, 155–60 (5th Cir. 2015).  For the reasons explained above, however, those decisions are inconsistent with the Supreme Court's jurisprudence on standing.  This Court should not follow those out-of-circuit Fifth Circuit decisions and should instead follow the Sixth Circuit's decision in *Arizona* and Chief Judge Howell's decision in *Arpaio*, both of which rejected nearly identical theories of State standing.  *Arizona*, 40 F.4th at 383–85; *Arpaio*, 27 F. Supp. 3d at 202.

*Second*, in addition to failing to establish a cognizable injury, Proposed Intervenors also fail to show that any of their alleged financial harms are fairly traceable to the vacatur of CDC's Title 42 orders.  Proposed Intervenors do not allege, for example, that they are harmed because of specific actions they have taken in reliance on CDC's Title 42 orders.  Instead, Proposed Intervenors contend that the current immigration laws and policies are inadequate to address an anticipated surge in migration once Title 42 ends, and they point to costs that they may incur as a result of the federal government's enforcement of immigration laws.  But that is no basis to intervene in this action. Whatever policy concerns Proposed Intervenors may have about noncitizens' migration patterns, Congress did not enact Section 265 to address them; rather, Section 265 is a public health statute targeting the serious danger posed by communicable diseases.

The Supreme Court's decision in *California v. Texas*, 141 S. Ct. 2104 (2021), is illustrative of the point that a State does not have standing based on alleged financial harms not traceable to the challenged action.  There, several States challenged the constitutionality of the Affordable Care Act's individual mandate based on allegations that other provisions in the Act created "a direct injury resulting from a variety of increased administrative and related expenses."  *Id.* at 2117.  The Supreme Court concluded that those increased administrative and related expenses were not "fairly traceable" to the individual mandate—namely, the "allegedly unlawful" provision "of which the plaintiffs complain." *Id.* at 2114, 2119 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  The Court emphasized that the "other provisions" giving rise to costs "operate[d] independently" and "[n]o one claim[ed] these other provisions violate the Constitution."  *Id.* at 2119-20.  Thus, although standing requires "de facto causality" and may sometimes be based on substantiated "predictable effect[s]," *Dep't of Com.*, 139 S. Ct. at 2566 (quotation marks omitted), a party lacks standing based on harms from laws that

operate independently.    Here, Proposed Intervenors' alleged injuries are at most traceable to immigration laws that are not at issue in this case.[1]

Citing *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007), Proposed Intervenors also assert that they are entitled to "special solicitude" in the standing analysis.  Mot. 14.  But *Massachusetts* is of no help to Proposed Intervenors.  In that case, Massachusetts, among others, sued the Environmental Protection Agency ("EPA"), alleging that the agency's refusal to regulate greenhouse gases was inconsistent with the Clean Air Act and that the agency's failure to regulate contributed to increased global warming and harm to the environment.  *Id.* at 504.  The Supreme Court found that Massachusetts had alleged an injury to its interest in preserving its "sovereign territory"—*i.e.* "a particularized injury in its capacity as a coastal landowner"—given the "uncontested" evidence that the State's coastal land "ha[d] already [been] harmed and [would] continue to [be] harm[ed]" by the environmental effects that were the subject of the State's petition for rulemaking.  *Id.* at 499, 519–20, 522, 526.  Moreover, "of critical importance to the standing inquiry," *id.* at 516, the Supreme Court said, was Congress' authorization in the Clean Air Act to permit suit to challenging EPA's denial of the State's petition for rulemaking to redress the State's own injuries.  *See id.* at 520 n.17 ("Massachusetts does not here dispute that the Clean Air Act applies to its citizens; it rather seeks to assert its rights under the Act.").  In other words, *Massachusetts* held only that a State had standing to challenge the denial of a rulemaking petition when the denial threatened to diminish its "sovereign territory" and the Clean Air Act vested it with specific procedural rights related to the subject.  *See*

---

[1] In a footnote, Plaintiffs also seek to establish standing by relying on certain "Memoranda of Understanding" that a former DHS official, Ken Cuccinelli, purported to enter into with Arizona and Louisiana on DHS's behalf.  Mot. 14 n.3.  Both MOUs have been terminated. *See* ECF No. 12-1 at 20–29 in *Arizona v. DHS*, No. 2:21-cv-00186 (D. Ariz. Mar. 8, 2021); ECF No. 42-4 in *Texas v. United States*, No. 6:21-cv-00016 (S.D. Tex. May 18, 2021).   In any event, standing is a fundamental jurisdictional question that is not subject to waiver or agreement.  Rather, whether a party has standing turns on whether the party can establish "real," concrete injuries that can be traced to challenged conduct.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204–05 (2021).  Moreover, even if the MOUs were valid and effective, they do not provide that Plaintiffs would have standing to defend challenges to CDC's Title 42 regulation and orders simply because the regulation and orders have effects on immigration.

*Manitoba v. Bernhardt*, 923 F.3d 173, 182 (D.C. Cir. 2019) (Massachusetts "asserted its own statutory right and alleged its own harm to establish an injury-in-fact").

"While the States may have more theories of injury available to them" because of their sovereign interests, "that does not allow them to bypass proof of injury in particular or Article III in general." *Arizona v. Biden*, 31 F.4th 469, 476 (6th Cir. 2022). Thus, States may not establish injury in fact by citing a federal policy's "downstream costs to the States in the form of additional crime and public-welfare costs," *id.* at 474, or "indirect fiscal burdens allegedly flowing from" the federal policy, *id.* at 476. Those indirect burdens cannot "count as a uniquely sovereign harm" because "[a] State has no more reason to fear harms to its bottom line from federal regulations than a person or a business does." *Id.* And in any event, "the key sovereign with authority and 'solicitude' with respect to immigration is the National Government, not the States." *Id.*

Equally unavailing is Proposed Intervenors' attempt to rely on a purported quasi-sovereign interest in upholding Title 42's implementing regulation and orders. Mot. 15. As the D.C. Circuit has recognized, "[t]he general supremacy of federal law means that the federal *parens patriae* power should not, as a rule, be subject to the intervention of states seeking to represent the same interest of the same citizens." *Manitoba*, 923 F.3d at 183 (citation and internal quotations omitted). "For that reason," the D.C. Circuit said, with respect to federal policies, "a state cannot have a quasi-sovereign interest because matters of federal law fall[ ] within the sovereignty of the Federal Government." *Id.* A State's defense of federal law, therefore, would "usurp[] the role of the federal government." *Id.* Indeed, Congress vested in the CDC the authority to implement Title 42. Any interest in the continued validity of the Title 42 regulation so as to ensure that "CDC is able to rapidly react to emerging public health threats and exclude aliens to the maximum extent permitted by Congress," Mot. 15, is exclusively within the province of the federal government. Accordingly, Proposed Intervenors cannot rely on such an interest to establish their Article III standing, let alone to establish a protected legal interest in this litigation.

Finally, Proposed Intervenors plainly cannot rely on any "procedural right" to APA's notice-and-comment procedures in support of their standing to intervene in this case. *See* Mot. 15. They

argue that they seek to protect such a procedural right "regarding any changes to CDC's Title 42 implementing regulation and the associated Title 42 Orders." Mot. 15. But Proposed Intervenors are seeking to *defend* the lawfulness of CDC's Title 42 implementing regulation and orders in this suit; they are not intervenor-plaintiffs raising procedural challenges (or any others). And in *Louisiana*, Proposed Intervenors have challenged only the purported procedural defects of the Termination Order, which is not in issue in this case. The fact that the *Louisiana* suit could be rendered moot by this Court's November 15 order by no means shows that Proposed Intervenors' procedural rights are impaired.

### B.     Proposed Intervenors' Motion is Untimely

Even if Proposed Intervenors could establish standing and had a legally protected interest in this action, their motion would be untimely. The timeliness of a motion to intervene "is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Amador Cnty., Cal. v. U.S. Dep't of the Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014) (quoting *United States v. British Am. Tobacco Australian Servs. LTD.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006)). Where a party is seeking to intervene when the Court has already entered judgment—or here, granted partial summary judgment followed by a Rule 54(b) final judgment—the intervention motion "will usually be denied where a clear opportunity for pre-judgment intervention was not taken." *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999) (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986)).

Here, Proposed Intervenors had multiple "clear opportunit[ies]" to intervene in this action but failed to do so. Plaintiffs filed their complaint on January 12, 2021, more than twenty-two months ago. And this Court issued a preliminary injunction enjoining the application of the "Title 42 Process" to covered family units in September 2021. While Texas did attempt to intervene in the Court of Appeals regarding the government's interlocutory appeal, none of the Proposed Intervenors sought to intervene in this litigation before this Court at that time or even after CDC made clear in its April 1, 2022 Termination Order that the August 2021 Title 42 Order was no longer necessary to protect

14

the public health.  87 Fed. Reg. at 19,953.  Instead, Proposed Intervenors chose to initiate their *own* litigation in the Western District of Louisiana to vindicate "Plaintiffs States' [purported] reliance interests in the continuation of the Title 42 policy."  Compl. ¶ 139, *Louisiana v. CDC*, No. 6:22-CV-00885 (W.D. La. Apr. 3, 2022), ECF No. 1.  They did so despite being fully aware that their interests could diverge from the federal government's in this case, in light of CDC's conclusion in the Termination Order.

Proposed Intervenors continued to take no action to intervene when the government notified them and the *Louisiana* court of Plaintiffs' motion for partial summary judgment and the relief that Plaintiffs were seeking, including vacatur of CDC's "Title 42 Policy."  *See, e.g.*, Defendants' Monthly Report at 6 n.2, *Louisiana v. CDC*, No. 22-cv-00885 (W.D. La. Aug. 16, 2022), ECF No. 154; *see also* ECF No. 155 at 6 n.2; ECF No. 159 at 7 n.1; ECF No. 165 at 7–8.  Instead of seeking to intervene at that time to defend their alleged interests, including to allow the parties to litigate Proposed Intervenors' Article III standing in an orderly fashion, Proposed Intervenors waited until this Court granted partial summary judgment, issued a permanent injunction, vacated and set aside the "Title 42 Policy," and now entered final judgment under Rule 54(b), to litigate the intervention issue on an emergency basis.  The intervention motion is plainly untimely.

Proposed Intervenors nonetheless assert that their motion is timely because the "Federal Defendants [purportedly] have shifted course and abandoned their defense of Title 42."  Mot. 1.  And Proposed Intervenors allege that they "made this motion within six days of learning the Federal Defendants would not defend the legality of the Title 42 policy by seeking an appeal."  Mot. 10.  That the government did not seek a stay pending appeal—and has not yet concluded its decisionmaking on whether to seek an appeal—does not excuse Proposed Intervenors' tardiness in seeking to protect their claimed interests in this litigation.  Indeed, once the Termination Order was issued in April 2022, Proposed Intervenors knew or should have known that the government might not seek a stay pending any appeal in the event of an adverse decision.  That is because, to seek a stay pending appeal, the government would have to show, among other things, that it would be "irreparably injured absent a stay."  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  Such a showing would have been challenging because

CDC already determined in April 2022 that the exercise of Title 42 authority is no longer necessary in the interest of public health.  87 Fed. Reg. at 19,951–52.

Because Proposed Intervenors had a clear opportunity to intervene in this case sooner, the cases on which they rely are readily distinguishable.  *See* Mot. 9–10.  In *Smoke v. Norton*, 252 F.3d 468 (D.C. Cir. 2001), the D.C. Circuit allowed proposed intervenors to intervene because they had "no occasion to intervene" to protect their interests before judgment was entered.  *Id.* at 469.  Rather, prior to judgment, the proposed intervenors' interests were "fully consonant with those of the Government."  *Id.* at 471.  But that is hardly the case here, where Proposed Intervenors chose to sue the government in another forum to protect their alleged interests months before seeking intervention in this case, despite being fully aware by mid-August at the latest that this Court could grant Plaintiffs' requested relief.  Similarly, in *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002 (2022), the Supreme Court held that intervention was timely where a State's Attorney General sought to intervene "as soon as it became clear" that the State's interests would no longer be protected by the parties.  *Id.* at 1012.  Again, given CDC's April 1, 2022, Termination Order, it should have been clear that the government might not seek a stay pending any appeal if this Court issued an adverse decision.  Yet Proposed Intervenors waited until recently to seek to intervene, while choosing to prosecute their own suit against the government in another forum.

Proposed Intervenors are also wrong that their tardiness will not prejudice the parties.  Mot. 10.  Proposed Intervenors' motion has *already* prejudiced the parties.  In seeking to intervene at the eleventh hour, Proposed Intervenors attach some 900 pages of exhibits in support of their allegations of standing.  ECF Nos. 168-2 to 168-14.  These exhibits consist of, among other things, deposition transcripts and declarations from other proceedings, a guidance memorandum issued by U.S. Border Patrol, and voluminous briefing and exhibits from at least two other cases.  *Id.*  As explained above, Proposed Intervenors ask the Court to credit this evidence—produced for the first time after this Court's grant of summary judgment—in finding that they have Article III standing.  Because of the "emergency" nature of Proposed Intervenors' motion, the parties will not have a meaningful opportunity to challenge this alleged evidence or provide contrary evidence of their own.

This rushed briefing and consideration of Proposed Intervenors' standing could have been avoided if Proposed Intervenors had filed their motion sooner, either immediately after CDC issued its April 1 Termination Order or, at a minimum, after the government notified Proposed Intervenors of Plaintiffs' motion for partial summary judgment in mid-August.  Because they did not take these clear opportunities to intervene, Proposed Intervenors' motion is untimely.

> ## C.   Defendants Adequately Represent Any Interests That Proposed Intervenors Might Have in This Litigation

Proposed Intervenors also are not able to satisfy their burden to show that the government does not adequately represent their interests.  Although that burden is "minimal," *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972), "[a] mere difference of opinion concerning the tactics with which litigation should be handled" does not amount to inadequate representation, *Jones v. Prince George's Cnty., Maryland*, 348 F.3d 1014, 1020 (D.C. Cir. 2003).  The government has vigorously defended the lawfulness of CDC's Title 42 regulation and orders, and Proposed Intervenors apparently agree with the government that those orders and the regulation are not arbitrary and capricious.

Proposed Intervenors do not dispute that the government previously protected their interests.  But they contend that the adequacy of the government's representation changed recently when they "learn[ed] the Federal Defendants would not defend the legality of the Title 42 policy by seeking an appeal."  Mot. 10.  As explained above, however, all that has occurred so far is that the government has sought a temporary stay of the Court's November 15 Order.  And although the government is still in the process of deciding whether to appeal, disagreement over litigation strategy does not demonstrate inadequate representation.  *See Jones*, 348 F.3d at 1020 ("If disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning.").

It is especially important for the Court to enforce Rule 24's limits where, as here, the legal questions exclusively concern the APA's requirements for federal agencies and the requested relief would bind only the federal government.  It is the federal agency's administrative record and

decisionmaking that is the focal point of the Court's review; Proposed Intervenors are not the proper litigants to defend that record and decisionmaking.   Moreover, Congress has entrusted the Department of Justice to control "litigation in which the United States, an agency, or officer thereof is a party." 28 U.S.C. § 516; *see also* 5 U.S.C. § 3106; 28 U.S.C. § 519.  In representing the United States, the Department relies on the views of other entities within the government as well as its own "broad[] view of litigation in which the Government is involved throughout the state and federal court systems." *Fed. Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 96 (1994).  Permitting intervention as a matter of right solely because of a difference in litigation strategy on a matter exclusively within the federal government's province would encroach on the government's statutory discretion to exercise this litigation judgment and complicate the administration of importance cases involving federal policies.

## II.   PROPOSED INTERVENORS' REQUEST FOR PERMISSIVE INTERVENTION SHOULD BE DENIED

The Court should likewise deny Proposed Intervenors' request for permissive intervention. Mot. 17.  "Movants' lack of standing renders them ineligible for permissive intervention."  *Keepseagle*, 307 F.R.D. at 245–46.  Moreover, permissive intervention requires a timely motion, *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998), but Proposed Intervenors' motion is untimely for the reasons stated above.  Regardless, "permissive intervention is an inherently discretionary enterprise." *Id.*  Because Proposed Intervenors lack standing or any legally protected interest in this case, because their motion is untimely, because the government adequately represents Proposed Intervenors' interests, and because allowing intervention would be prejudicial at this time, the Court should exercise its discretion to deny permissive intervention.

## CONCLUSION

For the foregoing reasons, the Court should deny Proposed Intervenors' motion to intervene.

Dated: November 29, 2022

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar. #481052
United States Attorney

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIAN P. HUDAK
Chief, Civil Division

JEAN LIN
Special Litigation Counsel, NY Bar #4074530
Federal Programs Branch

SEAN M. TEPE, DC Bar #1001323
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-2533
Email: sean.tepe@usdoj.gov

/s/ John Robinson
JOHN ROBINSON, DC Bar #1044072
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, DC 20530
Tel (202) 616-8489
Email: john.robinson@usdoj.gov

*Counsel for Defendants*